## UNITED STATES FIDELITY & GUARANTY CO. v. MURPHY.

### No. 16003.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1935.

Spearing, McClendon, McCabe & Schmidt, of New Orleans, for appellant.

Hugh M. Wilkinson, A. Miles Coe, Fred W. Oser, and Geo. M. Leppert, all of New Orleans, for appellee.

JANVIER, Judge.

On April 21, 1931, Dr. P. F. Murphy, as owner, and Kenneth C. Cuevas, as contractor, entered into a written contract under

which the contractor undertook, for the price of $2,733, to make certain additions and repairs to the residence of Dr. Murphy. Security Building & Loan Association, having agreed to loan the amount required by the contract, also appeared in the contract and agreed that it would hold the said sum to the credit of Dr. Murphy and would make the payments provided for in the contract whenever the building expert selected should certify each payment to be due.

The work progressed and a payment of $1,700 became due. In the meantime, Dr. Murphy, who, with the consent of the contractor, had stored in the building a quantity of whisky, discovered that the said whisky had disappeared. He contended that the work which had been completed up to that time was defective in many particulars and prevailed upon the building and loan association to withhold the said payment until an adjustment satisfactory to him could be arrived at. At a conference which was held, Dr. Murphy practically conceded that the defects complained of were of no importance, and that he had objected to the payment of the $1,700 which was then due for the purpose of persuading the contractor to pay him the loss he had sustained in the disappearance of the whisky, his contention being that the contractor was liable for the said loss.

At this conference the contractor agreed that he would pay Dr. Murphy for the loss of the whisky and thereupon the building and loan association paid to the contractor $1,700, the full amount of the payment which was then due. · Simultaneously the contractor, Cuevas, gave to Dr. Murphy a check for $300, the amount agreed upon in compromise for the loss of the whisky. Thereafter the contractor became financially involved and was unable to pay certain claims for labor and material and United States Fidelity & Guaranty Company, which corporation had, on behalf of the contractor, executed the bond given in connection with the building contract, was called upon to pay and did pay these claims.

As a result of this payment, the surety became legally subrogated to any rights growing out of the said contract which the contractor may have had against the owner, Dr. Murphy, or against the building and loan association. In addition to the said legal subrogation, the surety also obtained from the said Cuevas an assignment of any claim which he had against Dr. Murphy growing out of the said payment of $300 for the loss of the whisky. That assignment reads as follows:

"New Orleans, La. Sept. 3, 1931.

"For valuable consideration I hereby assign, set over, abandon and deliver to the United States Fidelity & Guaranty Company, all my right, title and interest in and to the claim that I have against Dr. Francis P. Murphy, or Dr. Peter F. Murphy, and the Security Building & Loan Association, by virtue of a deposit made by me in the sum of Three Hundred & 00/100 ($300.) Dollars, as evidenced by my certified check drawn on the Metairie Bank in said sum of $300.00 dated June 27, 1931.

"This assignment is made to the United States Fidelity & Guaranty Company to assist in discharging the obligations under my bond on contract for alterations and repairs entered into on or about April 21, 1931 with Doctor Francis P. Murphy, or Dr. Peter F. Murphy, through the Security Building & Loan Association, location 424 Millaudon Street, New Orleans, La.

"[Signed]   K. C. Cuevas."

The surety then brought this suit, which has as its object the recovery from Dr. Murphy of the said $300 which was paid to him by the contractor.

In its petition, however, the surety did not allege that the said amount was paid in settlement of the said claim for lost whisky, but averred that that sum had been deposited with Dr. Murphy only conditionally, and that it was to be returned under certain conditions as set forth in the petition in the following language:

"(A) That K. C. Cuevas agreed to enclose the basement of the home of Dr. Murphy at 424 Millaudon Street with materials to be furnished by Dr. Murphy without cost to Dr. Murphy for labor; and upon completion thereof, that the sum of $200.00, being part of the $300.00 deposited with Dr. Murphy, would be returned to K. C. Cuevas and the United States Fidelity & Guaranty Company by Dr. Murphy.

"(B) That in the event that the water pipes and plumbing installed by K. C. Cuevas in the premises 424 Millaudon Street remained in good order and did not require repair for one year from June 27th, 1931, that the sum of $100.00 would · be returned by Dr. Murphy as aforesaid."

The surety further alleges that "the considerations above-mentioned have accrued to Dr. Murphy and that the terms and conditions have been complied with, maturing the obligation of Dr. Murphy to return * * * the sum of $300.00 aforesaid."

In his answer, Dr. Murphy alleged that the said sum was paid to him in settlement for the loss of the whisky and when, on the trial below, the evidence seemed to sustain that contention, the surety, plaintiff, maintained and now maintains that, nevertheless, it is entitled to the return of the said money, and it advances two reasons for this contention. It declares, in the first place, that the payment which Cuevas made in settlement for the vanished whisky had been made under duress; that, in order to avoid the dire financial consequences of not being able to pay his laborers, the contractor, in order to obtain the $1,700 payment due him, had been compelled to make the payment to Dr. Murphy. The surety also asserts that the money should be returned because it was paid to Dr. Murphy by Cuevas while the latter was acting entirely under error of law regarding his legal rights, or, more properly, his legal obligations. Civ. Code, art. 1846. The contention is that, as a matter of law, there was no liability in Cuevas, first, because it was not and is not charged that he himself took the liquor, or that his negligence was responsible for its disappearance; and, second, because, at the time, the prohibition laws of the United States prohibited, so the surety contends, the ownership of so large a quantity of liquor, and that, therefore, Dr. Murphy did not have and could not have a legal right to it.

In the court below there was judgment dismissing plaintiff's suit.

■ The legal subrogation which resulted when the surety paid the remaining claims which had grown out of the contract did not create in the surety any rights except to claim any balance which may have been due to the contractor as a result of the contract. But it is evident that there was no balance due under the contract. When Cuevas compensated Dr. Murphy for the lost whisky he paid him by separate check. The amount was not deducted from the contract payments. He received all that was due and he then settled and compromised a personal claim against himself. The building contract did not contemplate in any way the storage of whisky in the building, and therefore in no sense can it be said that the controversy over the liquor or the settlement which resulted had any relationship whatsoever to the building contract. If the contractor, after receiving full payment under the contract, chose to divert a portion of the money so received to the settlement of a personal claim, his surety did not thereby derive a right to claim the return of such money. Therefore, if the surety has any right to claim the said money, it must come from the conventional assignment. It cannot be found in the legal subrogation.

■ The surety, by the assignment, is given the right to assert only such claims as the principal, Cuevas, could have asserted. The record shows that the allegations made by plaintiff, that the payment of $300 was a deposit made conditionally and was to be returned, are absolutely unfounded, and that that sum was paid solely in compromise of the claim made by Dr. Murphy. Assuming, then, for the moment, that the surety may be heard to depart so far from the allegations of its petition as to contend that the payment was made under duress and under error of law, we shall investigate those contentions.

■ There is nothing in the record which would justify the conclusion that Cuevas acted under duress when he made that settlement. It is true that he was in need of the money which was due him, and that, possibly, had that payment not been due, he might not have agreed so readily to settle for the lost whisky. But we are convinced that at the conference at which the settlement was agreed to he acted on his own volition and was in no way forced or coerced into agreeing to make the payment. He demurred for a while solely because he did not wish it to appear that he was in any way morally or personally involved in the loss of the liquor, but he had no serious objection to assuming legal liability therefor.

It may be that the prohibition laws of the United States then in force prohibited the possession of the amount of liquor which was involved, but we have been unable to find anything in the laws cited or in the regulations filed in the record which so declare. But, even if the authorities of the United States could have objected to the possession of that quantity of liquor by a physician, we do not think that the question of the validity, vel non, of Dr.

Murphy's possession can be invoked at this time. The settlement has already been made; the contractor may or may not have been legally responsible for the disappearance. But when, with full knowledge of the facts, he agreed that he was liable and made full settlement for the loss, he cannot at this time be heard, nor can his assignee be heard, to claim restitution of the amount paid. It may well be that he could have successfully defended a suit for the value of the lost liquor, but that is not the question which is now before us. It may be that he could have shown that he was the gratuitous bailee and was, therefore, not responsible under the circumstances under which the whisky disappeared, but he did not choose to set up that defense, but agreed that under the circumstances he was responsible. There was at least a natural obligation on his part, since the whisky had been left in his possession by the owner. He recognized this natural obligation and made settlement. He therefore cannot be heard to claim the return of the amount so paid. Civ. Code, arts. 1757, 1758. If he may not himself claim it, his assignee may not.

The judgment appealed from is affirmed.

Affirmed.