## HANKS v. SHREVEPORT YELLOW CABS, Inc.

### No. 5806.

Court of Appeal of Louisiana.
Second Circuit.
March 8, 1939.

Eugene J. Coen, of Shreveport, for appellant.

Jackson & Mayer, of Shreveport, for appellee.

HAMITER, Judge.

Judgment for $321, and for the additional sum of $150 as attorney's fees, is sought herein by plaintiff. The suit is brought under the provisions of Act 150 of 1920, as amended. This legislation relates to the prompt payment of wages on the termination of employment. He alleges that prior to August 7, 1937, he was employed as a taxicab driver for the defendant corporation, and that on said date he was discharged without just cause. The aforementioned principal amount consists of the following claimed items:

$80 for certain weekly deposits made with defendant; $36 for deducted "shop" charges; $5 for accrued wages or commissions; $200 as penalties under said act.

Defendant, in the answer, denies that it owes plaintiff any amount. It avers that he was employed on two different occasions under a certain described employment agreement, and that he is indebted unto it in the sum of $64.84. It asks a dismissal of plaintiff's demands and a judgment in reconvention for the last named amount.

There was judgment rejecting the demands of plaintiff and also defendant's reconventional demand. Plaintiff appealed. Defendant has neither appealed nor filed answer to the perfected appeal of its opponent.

The defendant company owns numerous cabs that are used in the taxi service in the City of Shreveport. It employs and pays the drivers thereof on a commission basis. Each is engaged under the agreement and understanding that he will be responsible for and pay all damages sustained by a cab while under his control and also those occasioned to other property by reason of his driving. An indemnity fund is created through weekly deposits to care for the mentioned losses. The written rules and regulations of the company, which are explained to the employee when engaged and on which he is examined, make reference to the employment plan. It is therein stated that, "Drivers are responsible for their cab and the other car." They also provide: "Be sure to check your cab over before you go out in it;" the purpose of this being to assure the driver that it is free from damage caused by another employee. Other pertinent provisions are: "Look on the hook in the chauffeurs' room for shop charges, and if your name appears on a ticket and you know nothing of the damage to the cab see Henry", and, "A $1.00 deposit taken out each week in the office is to be used for any shop charge you may have."

The explained arrangement was adopted by the company with the view and hope of obtaining a reduction in the number of automobile accidents previously experienced. It had been invoked in other localities and proved to be effective.

The record discloses that plaintiff was in defendant's employ on two separate occasions. His first period of employment began in the year 1935. It ended in May, 1936, when he was discharged for an infraction of the company's rules. At that time he had on deposit about $30. From this amount there was deducted the damage charge that existed, and the balance was then paid to him.

He was reemployed in the latter part of 1936, and remained with the company until his dismissal in August, 1937. This termination was due to his failure to report an accident. The total charges against his account at that date amounted to $224.41, while his accrued commissions and the funds deposited by him aggregated $159.57. Thus his indebtedness with defendant exceeded the credits standing in his name.

One of the questions presented for determination by the appeal is whether or not plaintiff agreed to be responsible for all damages occasioned to and by his cab while it was in his possession. The evidence is convincing that he did. The aforementioned rules were thoroughly explained to him, and he was given an examination thereon. He was fully aware of his making a weekly deposit to the fund, and on several occasions he discussed certain damages with defendant's bookkeeper. An inspection of his cab was always made before he used it. This was done to avoid his being charged with damage caused by another. He knew that if the cab was found to be damaged the loss would fall on him.

The position is taken by plaintiff's counsel, however, that if an agreement of that character existed, such was violative of the provisions of Act No. 62 of 1914, and was therefore void; and that consequently he is entitled to recover the amount of the aforementioned credits without regard to the charges. The cited statute is penal in nature and must be strictly construed. The specific provisions invoked are found in section 2 thereof and read: "That it shall be unlawful for any individual, person, firm or corporation, acting either for themselves or otherwise, to assess any fines against their employees or to deduct any sum as fines from the wages of said employees, provided that this section shall not apply in cases where the employees wilfully or negligently damage goods or works or in cases where the employees wilfully or negligently damage or break the property of the employers and in such cases the fines shall not exceed the actual damage done."

Section 3 provides for the punishment to be imposed for violations of the act.

The named counsel characterizes the charges made in the instant case as fines, and argues that as such they are reprobated by the quoted statutory provisions. We are unable to agree with his position. The word "fine" in its ordinary acceptation has the distinct meaning of a pecuniary penalty. State v. King, 167 La. 350, 119 So. 252. A penalty in its primary sense denotes a punishment imposed for the commission of an offense or for some violation. The charges in the instant case were not made as a punishment and arbitrarily fixed and assessed against plaintiff because he failed to perform a duty or committed an improper act or violated a rule or regulation. They constituted sums of money actually expended by the defendant company, pursuant to the employee's agreement, in caring for damages that arose and existed by reason of plaintiff's operation of his cab.

It is next urged that the agreement, if entered into, was void because it was without consideration and was unilateral, potestative and against public policy. This contention also appears to be without merit. The employment arrangement between the parties provided for defendant's furnishing of the motor vehicle, the fuel and ordinary servicing necessary for the cab's operation, and certain administrative and business facilities, while the plaintiff was required to render services as a driver and stand responsible for all property damages resulting from his driving. The revenue produced by the venture was divided between them on an agreed percentage basis. Either was at liberty to terminate the contract whenever desirous of doing so; but so long as it endured each was obligated to the other for the performance of the assumed duties that the employment demanded. Furthermore, neither was burdened with any restrictions, regarding future operations and transactions, on the termination of the contract.

Plaintiff's counsel, in support of his last contention, cites, discusses and quotes from the cases of Blanchard v. Haber, 166 La. 1014, 118 So. 117, and Shreveport Laundries v. Teagle, La.App., 139 So. 563. These authorities do not appear to be applicable to the matter under consideration, for the contracts therein involved contained provisions for restricting the operations of the respective employees after termination of the employment.

The judgment is affirmed.