469 So.2d 1072 (1985)
Chris STOLL, Plaintiff-Appellant,
v.
GOODNIGHT CORPORATION, d/b/a International Tours of Bossier, Defendant-Appellee.
No. 16937-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
Rehearing Denied June 7, 1985.
*1073 Peters, Ward, Bright & Hennessy by J. Patrick Hennessey, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for defendant-appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
MARVIN, Judge.
Ms. Stoll appeals a judgment rejecting her demands to recover $778.75 she paid her former employer, a travel agency, for an NSF, or "hot" check, which she accepted in payment for airline tickets purchased by a customer of the agency about three months before her employment was terminated.
We affirm the judgment, finding that Ms. Stoll freely paid her employer in response to her natural obligation to do so and cannot reclaim the payment on the grounds that the obligation could not have been enforced by judicial action. CC Arts. 1760-62, 2303. Marigny v. The Union Bank of Louisiana, 12 Rob. 283 (La.1845); United States Fidelity & Guaranty Co. v. Murphy, 163 So. 724 (La.App.Orl.1935).
*1074 Ms. Stoll contends that defendant, by requiring her to reimburse it for the bad check loss, either has assessed a fine against her contrary to LRS 23:635, or has withheld wages due her at termination contrary to LRS 23:631.[1] She argues that she was not negligent in accepting the check, as the trial court found, and that she did not freely or voluntarily pay the $778 to her employer but did so only because she understood she would lose her job if she did not make the payment.
We agree that LRS 23:631 is not applicable because defendant did not fail to pay Ms. Stoll wages that were due her upon termination. We assume for the sake of argument that Ms. Stoll was not negligent in accepting the check as she contends, but find that LRS 23:635 is not applicable because she was not assessed with a fine within the meaning of the statute.

FACTS
Ms. Stoll began working as a travel counselor at defendant's Bossier City office in November 1981. On November 2, 1983, a customer desired to purchase an airline ticket with a check drawn on an account in the name of C.E. Jones. Ms. Stoll testified that the customer verbally identified herself as Beverly Yoder and produced an Arkansas driver's license bearing that name. The customer explained that she had recently married C.E. Jones and had not yet changed the name on her driver's license. She also told Ms. Stoll that she was "authorized" to sign the check on behalf of her "husband." In Ms. Stoll's presence, the customer wrote the check for $778.75 and signed it "C.E. Jones."
Following the "employee's procedure manual" of defendant, Ms. Stoll wrote Beverly Yoder's Arkansas address, phone number, and driver's license number on the back of the check. The manual also instructs employees to consult a manager when in doubt about any check transaction.
No manager or supervisor was in the office on that day. Even though one of the agency co-owners conceded that some of the travel associations to which defendant belonged require that member agencies have managers on duty in each office at least 35 hours per week, it is established that Ms. Stoll was usually alone in defendant's Bossier office.
When the check was returned unpaid, the agency manager referred Ms. Stoll to the provision in the manual regarding an employee's responsibility for failure to follow *1075 check handling procedures. Ms. Stoll was told that "it would be to her advantage" if she reimbursed the company for the loss.
Because the amount of the returned check was greater than her net monthly salary, Ms. Stoll paid the loss in two equal installments. On the next two paydays, Ms. Stoll received her normal paycheck and immediately gave defendant her personal check for one-half of the $778. Each of her checks to the agency was greater than her net salary for the pay period.
Appellant's employment was terminated in January 1984, about two weeks after she had fully reimbursed the agency for the loss. She was paid her wages for the period ending on the date of her dismissal and was paid two weeks severance pay.
The circumstances of this case, unfortunate as they may seem to Ms. Stoll, do not fall within the statutory protections she seeks to invoke. We find Ms. Stoll's payments were in response to her natural obligation to reimburse her employer for the loss resulting from her conduct. We make this finding even with the assumption that her conduct, as she argues, was not of a character that would have rendered her civilly responsible to her employer for a violation of company procedure.
Payment freely performed to satisfy a natural obligation cannot be reclaimed. CC Arts. 1761, 2303. See former CC Arts. 2133, 1759. The trial court, therefore, did not err in rejecting each of her demands.

AMOUNTS DUE UNDER THE TERMS OF EMPLOYMENT: APPLICATION OF LRS 23:631-2
These statutes provide an unpaid employee recourse against his or her former employer when the employer no longer has the incentive of a continuing employment relationship to pay amounts due under the terms of employment. By requiring an employer to pay these sums within three days of discharge or resignation, the statute also insures that an employee will not have to wait until the next scheduled payday to receive remuneration for personal services already performed. The statute is designed to insure that an employee receives promptly his or her last paycheck. C.G. Pearce v. Pete Austin, dba Austin Construction Company, 465 So.2d 868 (La.App. 2d Cir.1985); Stell v. Caylor, 223 So.2d 423 (La.App. 3d Cir.1969); Robertson v. International Motor Co. of Houma Inc., 314 So.2d 531 (La.App. 1st Cir.1975).
Ms. Stoll argues that defendant, at least indirectly, "withheld wages" by requiring her to "give back" each paycheck even though defendant did not deduct the loss from her wages. Defendant does not dispute that the source from which Ms. Stoll paid the loss may have consisted of her wages. We emphasize that Ms. Stoll paid by her personal checks, each of which exceeded her paycheck.
The statute does not indirectly or otherwise speak in terms of "withholding wages." It requires an employer to pay, upon demand by the employee after termination, amounts due under the terms of employment. Cases denying plaintiff's recovery under LRS 23:631 include Stell, supra, where employees sought to recover deposits made to secure issuance of company money and equipment to them, and Yancey v. Dickson Ice Cream Co., 190 So. 837 (La.App. 2d Cir.1939), where the employee agreed in advance to be responsible for shortages in the accounts of his subordinates. These cases demonstrate that the statute does not contemplate as a wage dispute a dispute over an amount that does not represent remuneration for personal services nor those where the amount claimed may not be due under the terms of employment.
Because Ms. Stoll has not brought a "well founded suit for unpaid wages" under LRS 23:631, she is likewise not entitled to § 632 penalties and attorney fees. Haywood v. Salter, 421 So.2d 1190 (La.App. 2d Cir.1982); Carriere v. Pee Wee's Equipment Co., 364 So.2d 555 (La.1978); McFarland v. Texhoma Contractors, Inc., 449 So.2d 1106 (La.App. 5th Cir.1984); Smith v. Burden Const. Co., 379 So.2d 1135 (La. App. 2d Cir.1980).

*1076 APPELLANT'S NEGLIGENCE: APPLICABILITY OF LRS 23:635
This statute proscribing the fine of an employee "shall not apply" to employers damaged by willful or negligent acts of employees.
The trial court found that Ms. Stoll breached her duty that was imposed by the defendant's employee manual. Each employee is required to
Ensure that when a passenger pays you a check his name and address, phone number and drivers license number are printed clearly on the reverse of his check. You must write the drivers license number on the check after checking that it is that of the holder. We are not able to take a claim to court unless this has been done. If you are in doubt as to whether or not you should accept a check, particularly if it is being mailed to you, seek the approval for same from your management. * * *
If ever you are in doubt about any of the aforementioned please consult your manager.
The trial court found that the language "his name" and "his check" should have alerted Ms. Stoll or any reasonable person of her experience and position to notify a manager or to refuse the check when confronted with Beverly Yoder's explanation of the discrepancy between her name and the name she signed on the printed check.
Ms. Stoll admitted that she "looked through" the manual but had not "read every page." Ms. Stoll had also attended a seminar where the provisions of the manual were explained to agency employees. Ms. Stoll had also been verbally instructed by management to write the information required by the manual on the back of each check she handled.
The record reveals that Ms. Yoder, the maker of the check, was living with C.E. Jones and that the bank on which the check was written had, on one prior occasion, honored a check written by Ms. Yoder on C.E. Jones' account. Detectives used the information Ms. Stoll wrote on the back of the check to find her. Ms. Yoder was later convicted of issuing worthless checks, not forgery.
Ms. Stoll is not without experience in the business world. She had worked in real estate for 18 years before 1981, but apparently did not routinely handle checks. Defendant's manager testified that, when first approached about the bad check, Ms. Stoll said she felt "terrible" and realized that she made a "serious mistake."
The provisions of LRS 23:635 making unlawful the assessment of fines against employees and LRS 23:631-2 making unlawful the withholding of employee wages are penal in nature and must be strictly construed. Hanks v. Shreveport Yellow Cabs, 187 So. 817 (La.App. 2d Cir. 1939); Stell v. Caylor, supra; Washington v. Buffalo Mills Lumber Co., Inc., 451 So.2d 665 (La.App. 1st Cir.1984).
The trial court's finding of negligence to preclude application of LRS 23:635 presupposes that a fine was imposed. This finding is not necessary to resolution of the case. A fine, within the meaning of the statute, is a pecuniary penalty imposed for the violation of some law, rule, or regulation. Hebert v. State, Office of Employ., 448 So.2d 882 (La.App. 3d Cir.1984); Hanks, supra. The defendant's manager conceded that Ms. Stoll was asked to reimburse the company because she violated manual provisions, but it is not contended that the request was to penalize Ms. Stoll or was for any purpose other than to cover defendant's loss.
In Hanks, supra, a cab driver agreed to be responsible for damage to vehicles caused by his negligence. Charges against the driver for damages to a cab were not considered fines because the employer covered its loss with the money. The court said
A penalty in its primary sense denotes a punishment imposed for the commission of an offense or for some violation. The charges in the instant case were not made as a punishment and arbitrarily fixed and assessed aginst plaintiff because he failed to perform a duty or *1077 committed an improper act or violated a rule or regulation. The constituted sums of money actually expended by the defendant company, pursuant to the employee's agreement, in caring for damages that arose and existed by reason of plaintiff's operation of his cab. 187 So. at 819
Hanks did not base its holding squarely on the finding that the employee breached his duty. The court said that the charge was not a fine in the first instance because the written regulations of the company, which were explained to the driver, made the driver responsible for damages to company vehicles under his control.
Hebert, supra, questioned whether a pay deduction gave sufficient cause to an employee to resign so as to entitle the employee to unemployment benefits. There the employer charged a supervisory employee for wages erroneously paid to workers that the supervisor had ordered and not used. The court said that a fine had been imposed because the employer did not make it clear to the supervisor that the workers must be used when ordered.
Ms. Stoll strenuously argues that a fine was imposed because her payment was not "voluntary" or "freely performed." CC Art. 1761. She says she "understood" that she would lose her job if she did not pay the loss. She also said that defendant refused to extend less burdensome terms of payment. She argues that she had "less than no pay" during the pay periods in which she paid defendant. These circumstances, however, do not tend to show that defendant sought to impose a monetary fine or other sanctions simply by seeking reimbursement for its loss. Although Ms. Stoll's allegations may suggest that defendant somehow unjustly terminated her, she does not seek damages or equitable relief for wrongful discharge.
While defendant's employee manual cannot be raised to the status of an employment contract, there is ample evidence that Ms. Stoll was aware of the manual provisions regarding check procedure and employee responsibility for bad check losses. Ms. Stoll's awareness of these provisions seriously enervates her contention and instead reflects "voluntariness" of her decision to pay the loss without serious challenge. There is no evidence that her payment was anything other than a mutual acknowledgement of what the parties then viewed as Ms. Stoll's responsibility under the manual provisions.
As in Hanks, our decision not to apply LRS 23:635 need not squarely rest on a determination that Ms. Stoll was negligent in breaching the manual provisions. We simply hold that, under a strict construction of the statute, a fine was not imposed. Even when an employee may not be civilly responsible for a loss to his employer, the employer who obtains reimbursement for the loss has not imposed a fine where the employer does not unilaterally deduct the amount from the employee's wages, but obtains an agreement from the employee to pay the loss directly, and the amount paid does not exceed the amount of the loss.

APPELLANT'S NATURAL OBLIGATION TO PAY THE LOSS
A natural obligation is not enforceable by judicial action. CC Art. 1761. It arises from circumstances in which the law implies a particular moral duty to render a performance. CC Art. 1760. The debtor who pays a natural obligation does so, not out of a sense of liberality, but out of a sense that a debt is truly due, and although enforcement of that debt may not be positively sanctioned by the Legislature or the courts. "It follows that the existence of a natural obligation will serve to characterize as onerous a certain contract that would otherwise be considered gratuitous ..." 1 Litvinoff, Obligations § 305 in 6 Louisiana Civil Law Treatise 551 (1969).
CC Art. 1762 states examples of circumstances giving rise to a natural obligation. The official revision comment (b) notes that the flexible language of the article indicates, in accord with progressive *1078 continental doctrine and later Louisiana jurisprudence, that the listing of the article is illustrative.
French doctrine provides detailed criteria to aid in determining whether and when a moral duty becomes a natural obligation.
1. The moral duty must be one of justice and not of simple charity ...
2. The moral duty must be recognized and assumed by the obligor through voluntary payment or the promise to pay, as he is not legally compelled to fulfill it.
3. Recognition of the moral duty must not impair the public order. The obligor is not allowed to make an arbitrary discharge of a moral duty. 1 Litvinoff, supra, § 320.
Additionally, a natural obligation of this sort has been recognized in French doctrine to support voluntary payment to cover damage to another where the loss occurred without fault of the natural obligor or where it is not clear whether the natural obligor would be civilly responsible.
An engagement undertaken or payment made in the circumstance (of loss without fault), having no other object than to repair the injury caused by the act of one of the parties and to indemnify the other party for this damage, should not be considered as dictated by a simple sentiment of liberality and as constituting in favor of the other party a veritable donation destined to enrich him ... (the French equivalent to our former CC Art. 2133), by declaring that there can be no action with respect to voluntarily discharged natural obligations, does not mean to indicate that payment in the absence of a veritable natural obligation is always without cause and must necessarily give rise to a claim for the recovery of a thing thus paid. 1 Litvinoff, supra, § 318.
Ms. Stoll's payment to defendant satisfies each criterion explained by the cited authorities. We again emphasize that Ms. Stoll paid the loss without serious challenge after the agency manager referred her to the manual provisions. Without inquiring whether she could have been held civilly responsible, Ms. Stoll agreed, however reluctantly, to reimburse the agency for its loss. Ms. Stoll's payment obviously arose not from coercion but from "duty of conscience," the common denominator of all natural obligations that distinguishes them from acts of charity. 1 Litvinoff, supra.
A natural obligation cannot be enforced by judicial action, but once a debtor recognizes and freely performs in response to a natural obligation, she cannot recover or reclaim what she has done or paid. CC Arts. 1761, 2303. Former CC Arts. 1759(1), 2133. To acquire the right to recover payment of a thing not due, the thing paid by mistake must not be due "in any manner, either civilly or naturally." CC Arts. 2302, 2303, our emphasis.
The reference in former CC Art. 2133 to voluntary payment has been interpreted to allow recovery only when the natural obligation was paid under the effects of fraud or violence. Payment is nevertheless voluntary when made in error. 1 Litvinoff, supra, § 356. See also comment (b) under CC Art. 1761, discussing the change in the former phrase "voluntarily given" to the phrase "freely performed" in CC Art. 1761.
The effect of an employee's voluntary payment of a loss to his employer was demonstrated in Marigny v. The Union Bank of Louisiana, 12 Rob. 283 (La.1845). There, a bank cashier's conduct that caused a deficit was said to have created a natural obligation, the result of which was that a surety on the note given by the cashier to satisfy the bank's loss could not recover what he had paid the bank on grounds of error or failure of consideration.
United States Fidelity & Guaranty Co. v. Murphy, supra is likewise analogous. There, a homeowner prevailed upon his home repair contractor to pay him $300 to compensate him for whiskey the homeowner contended was stolen from the home because of the contractor's negligence. The homeowner persuaded his lender to withhold payment to the contractor until *1079 the whiskey dispute was settled. When the contractor's surety was called on to pay various workmen, the contractor's surety became subrogated to the claims the contractor might have had against the homeowner, including the $300 the homeowner was paid for the whiskey loss. The contractor explained to his surety that the $300 represented a "deposit."
The subrogated surety then sued the homeowner to recover the $300, contending that it was paid in error by the contractor. The court said
The settlement has already been made; the contractor may or may not have been legally responsible for the disappearance. But when, with full knowledge of the facts, he agreed that he was liable and made full settlement for the loss, he cannot at this time be heard, nor can his assignee be heard, to claim restitution of the amount paid. It may well be that he could have successfully defended a suit for the value of the lost liquor, but that is not the question which is now before us. It may be that he could have shown that he was the gratuitous bailee and was, therefore, not responsible under the circumstances under which the whisky disappeared, but he did not choose to set up that defense, but agreed that under the circumstances he was responsible. There was at least a natural obligation on his part, since the whisky had been left in his possession by the owner. He recognized this natural obligation and made settlement. He therefore cannot be heard to claim the return of the amount so paid. 163 So. at 727.
Other instances where recovery of sums paid has been precluded by a natural obligation include erroneous interest paid but not prayed for in an expropriation judgment (Shell Pipe Line Corp. v. Sarver, 442 So.2d 884 (La.App. 3d Cir.1983)), and payment above a contract price to a contractor for work done arguably beyond the terms of the contract (Banta v. McSpadden, 147 La. 847, 86 So. 287 (1920)).
We do not consider Ms. Stoll's perceived fear of losing her job sufficient to render her decision to pay the loss either erroneous or involuntary and not freely performed within the meaning of the Civil Code so as to allow her recovery. When the bad check was returned and the manager approached Ms. Stoll with the manual provisions regarding employee responsibility for loss, Ms. Stoll apparently considered herself a debtor and the agency a creditor. After the fact of payment, under these circumstances, the accuracy of Ms. Stoll's evaluation of her legal liability to the agency is immaterial to the issue of whether the natural obligation was freely performed or paid voluntarily.
Ms. Stoll is also not entitled to penalty wages or attorney fees in connection with her claim under LRS 23:635, even assuming that defendant imposed a fine on her in violation of that section. LRS 23:632 allows penalties and attorney fees only for violations of LRS 23:631. An employer that assesses a fine faces the penalty imposed under LRS 23:636 and we have found that Ms. Stoll was not "fined."
We AFFIRM the judgment at appellant's cost.
SEXTON, J., dissents and assigns written reasons.
SEXTON, Judge, dissenting.
I respectfully dissent. While I agree with the majority that LSA-R.S. 23:631 and 635 do not avail plaintiff, I do not agree that plaintiff has voluntarily discharged a natural obligation and thus cannot recover. On the contrary, I would find for plaintiff on the basis that she paid a thing not due.
A natural obligation is the payment or promise to pay an obligation for which a party has accepted responsibility but which cannot be civilly enforced. LSA-C.C. Art. 1761. On the record before us I cannot determine that plaintiff voluntarily accepted this obligation. In fact, I believe the defendant demanded her repayment under the implicit threat of termination.
The central issue here should be whether or not this plaintiff/employee followed company policy. If she did not follow company *1080 policy, she had a real obligation to repay which is civilly enforceable and therefore not a natural obligation by definition. If she did follow company policy, her payment of the value of the check is the payment of a thing not due. LSA-C.C. Arts. 2302 and 2304.
The company policy manual states that the employee is obligated to return funds lost from a bad check if the employee does not obtain the information required by the manual or does not obtain managerial approval. Managerial approval was impossible here and the plaintiff indeed got all of the information available. As the manual states, the purpose of obtaining information is so the company can "go to court." As a result of the information obtained, the presenter was readily identified and criminal charges were brought. Thus, the plaintiff substantially complied with company policy and the stated purpose of that policy was realized.
Therefore, I would find for the plaintiff in the amount of her payment to the company. I respectfully dissent.
NOTES
[1] LRS 23:635 provides:

"No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages. This section shall not apply in cases where the employees wilfully or negligently damage goods or works, or in cases where the employees wilfully or negligently damage or break the property of the employer, but in such cases the fines shall not exceed the actual damage done."
LRS 23:631(A) provides:
"Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service."
LRS 23:632 provides:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."