CHEHARDY, Chief Judge.
Defendant West Enterprises, Inc./Associated Distributors, Inc., d/b/a West Cash & Carry Building Materials of New Orleans, Inc. (initially designated as West Building Materials in the record, designated as West Cash & Carry Building Materials of Louisiana, Inc., in the judgment and hereinafter referred to as West), appeals from a judgment rendered in favor of plaintiff, Charles J. McCoil, in a wage dispute.
The first issue presented in this case is whether or not defendant wrongfully withheld money from plaintiff’s wages to partially recompense defendant for two N.S.F. cheeks plaintiff accepted in payment of building supplies. Defendant’s second issue involves the propriety and the amount of penalties awarded to plaintiff for defendant’s failure to pay plaintiff within three days of his termination the amounts due him as required by LSA-R.S. 23:631.
In his answer to the appeal, plaintiff requests additional attorney fees.
Plaintiff was employed by defendant from 1981 until 1987. Defendant is in the building supplies business and in November 1985 plaintiff’s position was sales manager of professional sales for his particular store. His duties related to the management of that department, including the supervision of several other sales persons. The department handled sales to those people employed in the building industry.
In October 1985 a new company, Louisiana Flea Market, applied for credit with defendant. Its credit was never approved. However, in the meantime, on November 7, 1985 an order was placed by that company, payment of which was to be by check. Before agreeing to this arrangement, plaintiff informed Jim Levick, the store manager, of the company’s intent to pay by check. Levick instructed plaintiff to accept this method of payment only after first checking with the bank on which the check was drawn to make sure sufficient funds were in the account. A second order four days later was similarly handled. In both instances, deliveries of the supplies were made the morning following receipt of the checks by plaintiff, who then deposited the checks with the assistant manager or cashier in accordance with company policy. As it turned out, the checks were eventually returned N.S.F. and the defendant was unsuccessful in its attempt to collect the money from Louisiana Flea Market.
When it became apparent defendant was not going to recover the losses from Louisiana Flea Market, in February 1986 it informed Levick and plaintiff the company intended to hold plaintiff responsible for the uncollectible amounts. That decision was based on their conclusion he violated company policy in handling the acceptance of the checks. Levick volunteered to share the responsibility since he believed plaintiff did as he was instructed to do by him. Thereafter $25 per month was deducted from Levick’s pay and all of plaintiff’s “add-ons” were deducted from his paycheck. After protest from plaintiff and intervention by Levick, the plaintiff’s deductions were reduced to $25 per month and he was refunded $382.69 out of the $860.69 previously withheld.
Plaintiff continued to work for defendant for 18 more months, during which time he was demoted once and promoted once. Then on July 15, 1987 plaintiff was terminated. He subsequently filed suit to recover the withheld sums, as well as penalties and attorney fees, alleging defendant violated LSA-R.S. 23:631 by failing to pay him the money owed him within three days of his termination and demand for payment.
The case was tried before a judge on May 4,1988 and at its conclusion was taken under advisement. On November 29, 1988, the trial judge rendered a judgment in plaintiff's favor awarding him the withheld wages in the amount of $2,175.99, penalties in the amount of $11,610 and attorney fees totaling $4,593.33.
On appeal defendant first asserts the trial judge erred in determining plaintiff was entitled to a refund of the amounts deducted from his pay checks. In this re *1304 spect defendant asserts plaintiff agreed and consented to the withholding and/or that plaintiff knowingly violated company policy thus creating either a civil or moral obligation to repay the amounts. Plaintiff denies both these allegations of fact.
Defendant contends it was entitled to deduct the losses it sustained from plaintiffs wages because plaintiff failed to follow check acceptance procedures as delineated in the Policy and Procedure Manual. Wilson McCrary, defendant’s vice-president, testified it was company policy to seek recovery of such losses from the employee when the employee failed to follow the procedures outlined in the manual and its periodic supplements.
According to the manual, checks over $300 were acceptable only if they were pre-printed and supplied with driver’s license number, telephone number, delivery location, motor vehicle identification, credit card number or telecredit confirmation. In order to accept checks over $1,500, the manual required the employee to have the check certified, get a cashier’s check or seek home office approval. McCrary testified that in this case neither of the checks contained this information nor were they pre-printed.
McCrary testified copies of the check acceptance policy and procedures were kept at the cashiers’ counters as well as the sales desks, so he believed plaintiff knew of the company requirements. In addition, he stated plaintiff had participated in the manager trainee program in 1983, at which time he should have received a copy of the manual. He further asserted the company held monthly meetings and seminars to review the procedures with the employees and he contended he personally reviewed the provisions with Levick and plaintiff at one time. On cross-examination, McCrary admitted it was the responsibility of the store manager and his assistant to insure these policies and procedures were followed.
McCrary testified plaintiff was considered a good employee. He asserted the reason plaintiff received his final check more than three days after July 15, 1987 was because the company did not consider him terminated. He stated plaintiff was kept on the payroll after he was “relieved” of his position since he had been offered another job and the defendant was waiting for his decision. McCrary had no personal knowledge of this, however, as it was Cliff Amos, plaintiff’s regional supervisor who “relieved” plaintiff of his position.
Jim Levick, plaintiff’s supervisor, was no longer employed by defendant nor was he a resident of Louisiana when his deposition was taken. For this reason his deposition was taken for all purposes and produced at trial in lieu of his testimony in person.
According to Levick’s testimony, Louisiana Flea Market appeared to be a new rising business in the area. He stated when plaintiff informed him the new business wanted to pay by check he told plaintiff to accept it if he verified the amount first with the bank on which the check was drawn. He did not know the checks plaintiff received were not pre-printed. However, he stated he never told plaintiff this was required, nor did he tell plaintiff to get the information required by the Policy and Procedure Manual.
Levick stated plaintiff was a “pro” (professional) sales supervisor whose duties covered a small portion of the store sales and that plaintiff was not authorized to handle the money except to collect it and turn it over to the cashier, the assistant manager or the manager. He stated it was the cashier’s job to gather the information required by the manual..
Levick testified the company manual was not available to the employees, but was kept in his office which was locked when no one was there. He stated he informed the employees of policies and procedures according to the relevance to their particular job. Since plaintiff did not handle money, he was not instructed about the check acceptance policies and procedures and Lev-ick stated he had no reason to expect plaintiff to be familiar with them. In regard to *1305 the monthly meetings testified to by McCrary, Levick contended the meetings primarily involved products and did not deal with check acceptance policies and procedures.
In addition to this testimony, Levick stated he felt neither he nor plaintiff was at fault in accepting these particular checks. He pointed out the Louisiana Flea Market was actively advertising and appeared to be flourishing. Levick thought it unfair to hold plaintiff responsible for the bad checks because he did as he was told to do. He furthermore stated he believed plaintiff followed his instructions because he was a good, trustworthy employee. When confronted with the defendant’s decision to deduct the losses from plaintiffs pay, Lev-ick stated he volunteered to share the losses with plaintiff because he did not want to lose plaintiff as an employee. As to plaintiff’s consent to the deductions, Levick denied plaintiff consented to the defendant’s withholding any sums from his paycheck. Levick also stated plaintiff continuously protested to Levick himself, to the regional supervisor, and at times to Vincent West, the company owner. In Levick’s opinion, plaintiff never consented but grudgingly accepted the situation in order to preserve his job.
Patrick Eiermann, assistant manager of accounting services for Jefferson Guaranty Bank, testified on defendant’s behalf. He was subpoenaed in order to review the bank’s records relating to the Louisiana Flea Market account. He testified to the contents of two accounts subpoenaed by defendant and stated neither account had sufficient funds to cover the amounts of either of the two N.S.F. checks accepted by plaintiff during the time period in question. He admitted, however, that he did not check to see whether other accounts existed in the name of the parties plaintiff was doing business with or in the name of the company itself.
Plaintiff, in his response to defendants assertions, testified he followed the instructions of Levick, and accepted the checks only after verifying the Louisiana Flea Market banking account (or accounts) had sufficient funds to cover each check. He denied having access to a manual or being familiar with the check acceptance procedures. He stated it was not his job to garner the information required by defendant, but only to pick up the checks and give them to the cashier, the manager or the assistant manager.
In regard to the deductions, plaintiff denied he consented to the withholdings. He stated he clearly and consistently protested the defendant’s actions, but was warned he would lose his job if he continued to object. Since he could not afford to lose his job, he stated he chose to remain with the company despite the deductions, but felt he was being treated unfairly.
Plaintiff asserts he was terminated from his job with defendant by Cliff Amos, the regional supervisor on July 15, 1987. He denies he was offered another position at that time. He stated Amos offered him another job as a salesman a week after he terminated him. At that time, plaintiff claims, Amos also told him he would see to it he received severance pay as well as his vacation pay.
Following his termination, plaintiff testified he immediately demanded the money owed to him and he included the sums he believed were improperly withheld for 18 months. Despite his demands he stated he did not receive a check until July 25, 1989, the envelope of which was postmarked July 23, 1989. The check included his wages, vacation pay and severance pay but did not include the amount of the deductions.
Defendant asserts the facts herein support its right to reimbursement under the law related to off-sets, to natural obligations and to estoppel. To support its claim for off-set, defendant cites Pinion v. Union Carbide Corp., 490 So.2d 479 (La.App. 4 Cir.1986), in which case an off-set was allowed where the employee left the employment before the employee could carry out his agreement to work extra days *1306 in exchange for extra vacation time; and Hanks v. Shreveport Yellow Cabs, 187 So. 817 (La.App. 2 Cir.1939), where an employee who damaged a company vehicle was required to pay for damages.
In regard to the natural obligation allegation, defendant cites Stoll v. Goodnight Corp., 469 So.2d 1072 (La.App. 2 Cir.1985). There an employee repaid the company’s losses from a bad check accepted by the employee. The employee later attempted to recover the amounts she paid, but her claim was rejected based on the court’s finding that the employee's payments were freely performed and they satisfied a natural obligation.
In its estoppel argument, defendant cites Duthu v. Allements’ Roberson Mach. Works, 393 So.2d 184 (La.App. 1 Cir.1980). In that case the court recited the law as it pertains to estoppel, noting the party invoking the doctrine must prove it justifiably relied on the voluntary conduct of the other party who changed his position to the invoker's detriment. Silence is not a basis for estoppel unless there is a duty to speak out and for that duty to exist certain conditions must be met, as follows:
“1) [T]he party estopped must be shown to have had opportunity to speak or act;
2) the party estopped must have had full knowledge of the facts and of his rights;
3) the party estopped must have intended to mislead or at least have had a willingness that others should be deceived; 4) the pleader of estoppel must be shown to have been ignorant of the truth and without convenient or ready means of learning the truth; and 5) the pleader of es-toppel must have been misled into doing what he would not have done but for the silence of the party estopped. * * * "
Duthu, supra, at 186-187. Here defendant argues the conditions have been met and the elements of estoppel proven, in that plaintiff retained his job by his misleading silence or acquiescence.
The applicability of defendant’s cited cases depends upon, as contended by plaintiff, plaintiff’s overt or tacit consent to the deductions. In this respect, the trial judge herein found plaintiff followed his supervisor’s instructions. He also found that the check acceptance policies and procedures were regularly modified with defendant’s knowledge and tacit consent, with the store manager as arbiter of the modifications. The trial judge apparently also concluded plaintiff was either unfamiliar with the manual’s policies and procedures and/or not responsible for implementing those policies and procedures. After reviewing the evidence we cannot say the trial judge erred in these findings. In addition, we find the evidence supports plaintiff’s contention that he did not willingly consent or agree to the deductions. Thus, the law as it relates to set-offs, natural obligations, and/or estoppel is inapplicable. Consequently, we find plaintiff is entitled to the recovery of the amounts deducted. Reeves v. A & M Pest Control Service, Inc., 379 So.2d 834 (La.App. 4 Cir.1980).
Defendant next contends the wage statute, LSA-R.S. 23:631, 632, is inapplicable. Defendant asserts the statute does not apply because plaintiff’s demands were met timely since he was kept on the payroll during the time in question. Defendant points out plaintiff was also paid his vacation pay and was gratuitously paid two weeks’ severance pay. It points out the purpose of the statute is to prevent misuse by the employer and to insure the terminated employee receives prompt payment of his wages, which defendant contends was done in this case.
LSA-R.S. 23:631 provides that a terminated employee is entitled to all sums due him within three days of his termination and/or demand. Those sums include any money owed plaintiff, regardless of the source or company policy. See Pohl v. Domesticom, Inc., 503 So.2d 125 (La.App. 5 Cir.1987).
In this case the evidence established plaintiff was terminated on July 15, 1987. Although McCrary testified to the contrary, he also admitted he had no personal knowledge of when plaintiff was actually *1307 fired. The fact the company may or may not have continued to carry plaintiff on the payroll is of no moment. The critical fact is that plaintiff was fired on that date. In addition, no contradictory evidence was presented to refute plaintiffs contention that he continuously demanded the money due him. Consequently we find the trial court did not err in applying the statute.
Defendant next asserts penalties were improperly awarded because a good faith dispute existed as to plaintiffs entitlement to a refund of the deductions. We find, however, no dispute existed regarding plaintiffs regular wages and vacation pay, whatever the merits of the dispute over the deducted wages. Thus, we cannot say the trial judge erred in awarding penalties for defendant’s failure to pay plaintiff timely since plaintiff was entitled to any amount not in dispute.
Finally, defendant complains, in the alternative, that the trial judge erred in his calculations of the statutory penalties. In this respect defendant contends the wrong weekly rate of pay was used — $645 instead of $635.
Statutory penalties are due the employee at the daily rate of plaintiffs wages for 90 days or full wages from date of demand by the employee until the amount due is tendered, whichever is less. LSA-R.S. 23:632. Here the evidence shows plaintiffs pay was $635 per week (including $70 add-ons, a viable amount which was consistently paid), plus $50 per month car allowance, an item defendant failed to consider. Adding $10 per week for the car allowance, plaintiffs weekly pay amounts to $645. That figure divided by five days equals $129 per day, which, multiplied by 90 equals $11,610. Thus we find the trial judge did not err in his calculations of statutory penalties.
The last issue we are presented with is plaintiffs request for additional attorney fees. Plaintiff asks this court to compensate counsel for his work related to the post-trial proceedings, including the defendant’s motion for new trial and his work related to this appeal. Plaintiff contends the parties stipulated that plaintiff’s counsel would testify to his normal hourly fee of $125 per hour, but defendant’s attorney would testify $75 would be the appropriate charge. The trial judge awarded plaintiff $4,595.33 in attorney fees for 60 hours of work (approximately $76.59 per hour). Plaintiff asserts counsel has expended another 31 hours and asks this court to raise the trial award using $125 per hour. At that rate plaintiff asserts he is entitled to an award totaling $11,375 in attorney fees.
We agree plaintiff is entitled to post-trial attorney fees per LSA-R.S. 23:632. However, we find the trial judge did not abuse his discretion in calculating the trial level fees at $76.59 rather than $125, as requested by plaintiff. Thus we find plaintiff is entitled to additional attorney fees in the amount of $2,374.29 to account for 31 hours of work at $76.59.
Accordingly, the judgment of the trial court is hereby affirmed. In addition, we hereby award plaintiff Charles J. McCoil post-trial attorney fees in the amount of $2,374.29 against defendant West Cash & Carry Building Materials of New Orleans, Inc.
Costs of this appeal are to be paid by defendant.
AMENDED, AFFIRMED AND RENDERED AS AMENDED.