577 So.2d 1103 (1991)
Gerald Wade GLOVER
v.
DIVING SERVICES INTERNATIONAL, INC.
No. CA 90 0014.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Rehearing Denied May 2, 1991.
*1104 James A. Carnes, Hammond, for plaintiff.
Jonathan R. Schmidt, Hammond, for defendant-appellant.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
This is a suit by plaintiff, Gerald Wade Glover, against defendant, Diving Services International, Inc. (DSI), seeking recovery of unpaid wages, statutory penalties and attorney's fees pursuant to La.R.S. 23:631, et seq.
Plaintiff began work for defendant on approximately October 1, 1987. Soon after he began work for DSI, he signed a Master Service Agreement which set forth various company policies. Plaintiff initially worked as a shop manager for approximately three weeks. He was later assigned by defendant to work at an offshore location. During November 1987, defendant assigned plaintiff to the position of welding supervisor for a job being performed by DSI at Dow Chemical Company (Dow). Plaintiff was paid $8.00 per hour for the work he performed at Dow. Plaintiff supervised the work of four other welders. The work of plaintiff and his crew was primarily performed on a barge owned by DSI, which was located on the Mississippi River. Another crew of DSI workers, consisting of a diving supervisor and several divers also *1105 worked on another barge in the same general area. Additionally, there were some workers classified as tenders and a third DSI barge used on the Dow job. A boat, provided by DSI, was attached to each barge to provide transportation for the DSI workers. On approximately November 18, 1987, the DSI project manager for the DOW job, Charles Gates, discovered that one of the boat motors being used at the Dow job was missing. He reported this finding to his superiors. Upon being informed of the missing motor, the owners of DSI deducted $130.00 from the paycheck of each DSI worker who was working on the Dow job; the sum of $130.00 was deducted from plaintiff's paycheck and from the paychecks of thirteen other workers. The $130.00 deduction allegedly represented a pro rata share of the replacement cost of the motor. According to plaintiff's testimony, plaintiff received his paycheck for the pay period of November 16, 1987 through November 24, 1987, in the amount of $494.00 on December 7, 1987. With the paycheck was a note which explained the $130.00 deduction for the missing motor. Plaintiff testified that the note which accompanied this paycheck was the first notification he received that an amount would be deducted from his check as a result of the missing motor. He further testified that he voluntarily terminated his employment with DSI on the same day that he received the paycheck with the $130.00 deduction.[1]
Plaintiff filed suit in the Small Claims Division of the City Court of Hammond, seeking a return of the $130.00 withheld from his paycheck and compensatory damages for defamation. DSI filed a Motion to Transfer, by which the case was transferred to the regular civil docket of the city court. Plaintiff subsequently amended his petition seeking penalties and attorney's fees.
The trial court determined that: 1) plaintiff was an employee of DSI and thus that La.R.S. 23:631 et seq. applied to the present case; 2) neither DSI's Master Service Agreement nor its Contractor Handbook authorized the $130.00 deduction from plaintiff's paycheck; 3) La.R.S. 23:635 does not authorize the $130.00 deduction; 4) defendant owes to plaintiff $130.00 in wages; 5) plaintiff's wages were not paid timely in accordance with the provisions of La.R.S. 23:631; 6) plaintiff is entitled to $7,920.00 as penalty wages and $1,500.00 attorney's fees pursuant to the provisions of La.R.S. 23:632; and, 7) plaintiff did not prove defamation by a preponderance of the evidence. In accordance with these findings, the trial court rendered judgment in favor of plaintiff and against defendant for unpaid wages in the amount of $130.00, penalty wages in the amount of $7,920.00 and attorney's fees in the sum of $1,500.00.
DSI appeals the trial court's judgment raising the following assignments of error:
(1) The Trial Court erred in determining that plaintiff was an employee of DSI rather than an independent contractor.
(2) The Trial Court erred in interpreting the Master Service Agreement and Company Policy Number EQ1 as not permitting the deduction from plaintiff's compensation of One Hundred Thirty and no/100 ($130.00) Dollars, which amount represented a pro rata share of the replacement cost of the equipment missing from the job site at which plaintiff was a supervisor.
(3) The Trial Court erred in awarding plaintiff compensation of One Hundred Thirty and no/100 ($130.00) Dollars.
(4) The Trial Court erred in awarding plaintiff penalty wages and attorney's fees.
(5) The Trial Court erred in the calculation of penalty wages.
(6) The Trial Court's award of attorney's fees was excessive.
The first issue raised is whether plaintiff was an employee of DSI or an independent contractor. The application of *1106 La.R.S. 23:631 et seq. to the present case is contingent upon a finding that plaintiff was an employee of DSI. See Knapp v. The Management Co., 476 So.2d 567 (La.App. 3d Cir.1985).
The Louisiana Supreme Court made the following statements regarding the distinction between employee and independent contractor status in Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, 390-391 (1972):
It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955).
The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists. Amyx v. Henry & Hall, ibid.
Factors to be considered in assessing the right of control are the selection and engagement of the worker, the payment of wages and the power of control and dismissal. Savoie v. Fireman's Fund Ins. Co., 347 So.2d 188 (La.1977).
In the present case, the trial court concluded that the relationship between the plaintiff and defendant was one of employer-employee and not that of a principal-independent contractor. We find this conclusion to be supported by the record. Although DSI's Master Service Agreement referred to plaintiff as a contractor, the facts of the case indicate that plaintiff was an employee of DSI. Plaintiff was not hired by defendant to perform a specific task to be accomplished without the control and direction of defendant. During plaintiff's brief employment with defendant, he performed a variety of tasks at the direction of defendant. While plaintiff performed welding at the Dow site, DSI's project manager, Charles Gates, gave plaintiff instructions regarding how to perform the welding work and the speed at which the welding work was to be performed. In addition, DSI supplied all of the equipment and tools which were used by plaintiff.
DSI paid plaintiff twice a month, based on an hourly rate. Gates not only recorded the hours worked by plaintiff but he also told plaintiff when to arrive at and depart from work. Clearly, the facts establish that DSI had the right to supervise and control plaintiff's work and did, in fact, exercise this right. Thus, we find no manifest error in the trial court's finding that plaintiff was an employee of DSI.
The second issue addresses whether DSI's Master Service Agreement or Contractor Handbook authorized the $130.00 deduction from plaintiff's paycheck. Plaintiff acknowledged signing the Master Service Agreement, which provides in pertinent part, as follows:
Company [DSI] agrees that it shall provide equipment as necessary and Contractor [Glover] agrees that prior to the commencement of the use of any such equipment Contractor shall thoroughly inspect and examine such equipment to *1107 insure that it is in safe and proper working order and, in the event any deficiency in such equipment be noted, it shall be immediately reported to Company both verbally and in writing. In the event the equipment returned from a job is not washed, cleaned, properly stored and appropriately tagged for problem items, Company staff will perform the aforementioned tasks and an appropriate fee will be deducted from all Contractors involved in the specific job.
The trial court determined that the first sentence of this paragraph did not authorize the disputed deduction because it was merely a safety notice and regulation from defendant to its employees. The trial court further determined that the second sentence of the paragraph merely provided a procedure whereby deficiencies or problems in equipment could be corrected and DSI's shop and headquarters could be kept in a clean and appropriate manner. The trial court found that the second sentence clearly did not authorize a deduction for missing equipment. We agree with the trial court's interpretation of the language of the Master Service Agreement.
The Master Service Agreement also refers to a Contractor Handbook. Defendant argues that one of the policies stated in this handbook authorizes the $130.00 deduction. The evidence is in dispute as to whether plaintiff ever received this handbook during his employment. However, whether or not plaintiff received this handbook or was aware of the policies stated therein is not significant, because we find that the policy in question does not authorize the $130.00 deduction. The pertinent language of the policy is as follows:
SUBJECT: Maintenance of Company Equipment/Vehicles
DATE: August 1, 1985
Equipment is one half of a diving service. Without it, even the best diver cannot get into the water and perform a task. The type and condition of equipment is a common factor taken into consideration when a client makes his evaluation of the service company he has hired. Abuse of company vehicles or any other equipment will not be tolerated. Therefore, the following policies will be in force to decrease equipment oriented problems:
It is the responsibility of the diving superintendent or the diver-in-charge to:
* Coordinate the selection and loading out of equipment.
* Insure that all items are in satisfactory working condition.
* Protect all equipment against the elements and from theft while on the job site.
* Coordinate the cleaning and checking in of company equipment upon its return to the shop. All gear will be brought to a ready-to-use state.
The trial court determined that this particular company policy pertains only to the diving personnel of DSI; it does not pertain to plaintiff who never worked as a diver or diving superintendent, but rather was a supervisor of the welding crew at the Dow job site. We agree that this company policy does not apply to plaintiff and, therefore, does not authorize the $130.00 deduction.
Defendant also cites La.R.S. 23:635 in support of its proposition that defendant has authority to deduct the $130.00 sum from plaintiff's paycheck.
La.R.S. 23:635 provides the following:
No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages. This section shall not apply in cases where the employees wilfully or negligently damage goods or works, or in cases where the employees wilfully or negligently damage or break the property of the employer, but in such cases the fines shall not exceed the actual damage done.
We find La.R.S. 23:635 inapplicable because no fine has been imposed in the present case. A fine, within the meaning of the statute, is a pecuniary penalty imposed for the violation of some law, rule, or regulation. Stoll v. Goodnight Corp., 469 So.2d 1072 (La.App. 2d Cir.1985). In the present case, DSI deducted the $130.00 from plaintiff's paycheck for the purpose of covering a loss rather than imposing a *1108 punishment and, therefore, the deduction is not a fine. Id. Hanks v. Shreveport Yellow Cabs, 187 So. 817 (La.App. 2d Cir. 1939).
However, even if we were to consider the $130.00 deduction as a fine, La.R.S. 23:635 provides no authorization for the deduction made in the present case. The evidence does not establish that plaintiff wilfully or negligently damaged or broke goods, works or property of DSI.
Since the Master Service Agreement, the Contractor Handbook and La.R.S. 23:635 do not authorize the disputed deduction, we find that plaintiff is entitled to recover $130.00 in unpaid wages.
We must next consider whether plaintiff is entitled to penalty wages. La. R.S. 23:631 provides that upon an employee's discharge or resignation, his employer has a duty to pay within three days the amount then due to the employee under the terms of employment. La.R.S. 23:632 provides that an employer who fails to comply with this duty shall be liable for penalty wages and attorney's fees.
The trial court determined that plaintiff did not receive his final paycheck within three days from the date that he voluntarily terminated his employment and thus, he is entitled to penalties pursuant to La.R.S. 23:632.
We find this factual determination to be manifestly erroneous. The evidence very clearly establishes that plaintiff terminated his employment on the same date that he received his final paycheck for the pay period of November 16, 1987 through November 24, 1987. Thus, plaintiff received his final paycheck within the time limitations provided by La.R.S. 23:631. The amount of this final paycheck was sufficient to pay all wages due to plaintiff except $130.00. Since this $130.00 sum has never been paid to plaintiff, we must determine whether plaintiff is entitled to penalties, based solely on defendant's action of withholding this sum.
La.R.S. 23:632 is a penal statute which must be strictly construed. In order for an employee to recover penalty wages, the employer must be found to have acted in bad faith or in an arbitrary or unreasonable manner. Blankenship v. Southern Beverage Co., 520 So.2d 440 (La.App. 1st Cir.) writ granted but subsequently dismissed on joint motion of parties, 522 So.2d 574 (1988). Penalty wages are not to be absolutely imposed when the facts indicate there is an equitable defense. Pearce v. Austin, 465 So.2d 868 (La.App. 2d Cir. 1985); Mondy v. Robin Towing Corp., 441 So.2d 361 (La.App. 5th Cir.1983). Where the amount owed the employee is the subject of a bona fide dispute, the courts will not consider the failure to pay as an arbitrary refusal and will refuse to award penalties. Jones v. Hebert & LeBlanc, Inc., 499 So.2d 1107 (La.App. 3d Cir.1986); Pearce v. Austin, 465 So.2d at 873.
Based on the facts of this case, we find that DSI had a bona fide belief that it was entitled to the $130.00 offset based on the language contained in the Master Service Agreement and Contractor Handbook. Since the remaining amount of wages due to plaintiff was timely paid, we find the trial court erred in awarding penalties. Accordingly, we reverse that part of the judgment awarding plaintiff $7,920.00 as penalty wages.
The remaining issues to be decided are whether plaintiff is entitled to attorney's fees and whether the $1,500.00 award of attorney's fees is excessive.
Reasonable attorney's fees are to be awarded in the event of a well-founded suit for any unpaid wages, even if penalty wages are not due. La.R.S. 23:632; Blankenship, 520 So.2d at 442; Soday v. Mall Snacks, Inc., 374 So.2d 138 (La.App. 1st Cir.1979).
Since plaintiff is successful in recovering $130.00 in unpaid wages, he is entitled to reasonable attorney's fees. The trial court awarded $1,500.00 for attorney's fees. Defendant argues that this amount is excessive. Because plaintiff was permitted to proceed in forma pauperis and is represented by Southeast Louisiana Legal Services, defendant argues that plaintiff has not incurred *1109 any costs or legal fees in this matter.
There is no evidence in the record to support defendant's argument that plaintiff has not incurred any legal fees as a result of these proceedings. After examining the record, we find the $1,500.00 award of attorney's fees to be reasonable. Plaintiff's attorney filed a number of pleadings and motions in this matter, engaged in a considerable amount of discovery, including the taking of plaintiff's deposition, propounding two sets of interrogatories to defendant and responding to interrogatories; opposed a motion for summary judgment and represented plaintiff during the trial. Furthermore, the jurisprudence also supports the amount awarded by the trial court. See Blankenship, 520 So.2d at 442; Pearce v. Austin, 465 So.2d at 874.
For the above reasons, the trial court's judgment in favor of plaintiff and against defendant for unpaid wages in the amount of $130.00 and attorney's fees in the amount of $1,500.00 is affirmed. The trial court's judgment in favor of plaintiff and against defendant for penalty wages in the amount of $7,920.00 is reversed.
Each party is to pay one-half of the costs of this appeal.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Although the employment records of DSI establish that plaintiff did not work after November 24, 1987, plaintiff repeatedly testified that he terminated his employment with DSI on the same day he received his final paycheck, December 7, 1987.