IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-30304
cons. w/ 99-30306
_____

George C. Samson, et al.,
        Plaintiffs,

George C. Samson, III, et al.,
        Plaintiffs-Appellants

versus

Apollo Resources, Inc., doing business as Apollo Services, Inc.; et al.,
        Defendants-Appellees.

_____

Lester D. Weaver; Crawford R. Norton,
        Plaintiffs-Appellants,

versus

Apollo Resources, Inc., doing business as Apollo Services, Inc.,
        Defendant-Appellee.

_____

_____

No. 99-30407
_____

George C. Samson, III, et al.,
        Plaintiffs,

George C. Samson, III, et al.,
     Plaintiffs-Appellants,

versus

Apollo Resources Inc., doing business as Apollo Services, Inc.; et al.,
     Defendants-Appellees.

_____

Appeals from the United States District Court
for the Western District of Louisiana
_____

February 20, 2001

Before KING, Chief Judge, and PARKER, Circuit Judge, and FURGESON, District Judge.[1]

FURGESON, District Judge:

This case involves a dispute over the applicability and administration of the Fluctuating Workweek ("FWW") method for calculating employees' salaries and overtime wages. We review the district court's judgment rendered for the Defendant in a non-jury trial pursuant to FED. R. CIV. P. 52(c). For the reasons stated herein, we affirm.

**FACTS**

The Plaintiffs – George C. Samson, Jackie D. Hays, Brent C. Manuel, Kevin D. Smith, Norman J. Landry, and Melvin K. Smith – are former employees of the Defendant Apollo, Inc. ("Apollo"). Apollo is an oilfield services company based in Louisiana. Its president and sole shareholder is Jeffrey A. Reddoch, who is also named as a defendant in

_____

[1] District Judge of the Western District of Texas, sitting by designation.

2

the suit. Plaintiffs worked on Apollo's offshore rigs as well as in its yard. During their employment, they were paid under a fluctuating workweek ("FWW") or sliding-scale method. This method is used primarily by employers whose employees may be called upon to work a fluctuating number of hours each week. Apollo adopted the FWW method in 1991 – after consultation with Don Strobel, then an Assistant District Director of the Wage and Hour Division of the Department of Labor ("DOL") – as a means of complying with the Fair Labor Standards Act ("FLSA") and meeting its own employment needs.

Under Apollo's policy, the employees received a fixed monthly wage plus a weekly overtime premium for each hour worked over forty. Unlike the standard "time and one-half" overtime premium, Apollo calculated the overtime premium by first dividing the monthly wage amount by 4.3 to arrive at the fixed weekly wage. Then each employee's weekly wage was divided by the actual number of hours worked by that employee for that particular week. This figure represented the employee's "regular rate of pay"[2] for that workweek. Under this method, the "regular rate of pay" fluctuates from week to week depending on the actual number of hours worked by the employee. Apollo then paid the employee an additional one-half of that workweek's regular rate of pay for each hour worked over forty as an overtime premium. In other words, the employees received a fixed salary for all hours worked in any workweek plus one-half times the regular rate of pay for all hours worked over forty in that

---

[2] For example, if an employee works 60 hours in a given week and his fixed weekly salary is $500, then his "regular rate of pay" per hour is $8.33 for that week. If the employee works 50 hours in given week and his fixed weekly salary is $500, then his "regular rate of pay" per hour is $10 for that week.

3

workweek. As part of its administration of the FWW method, Apollo made deductions from an employee's fixed salary in workweeks where the employee was willfully not available for work. These deductions, however, were taken only when the employee had not yet worked forty hours in that workweek.

## PROCEDURAL HISTORY

Originally, twenty-six plaintiffs brought suit against Apollo under the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq., the Louisiana Wage Statute, LA. REV. STAT. ANN. § 23:631 and § 23:632, and general employment contract law. They complained that Apollo's use of the FWW method, pursuant to 29 C.F.R. § 778.114, was unlawful because the employees frequently worked more than sixty hours in a week without receiving an additional overtime premium. The employees further claim that even if Apollo was allowed to use the FWW method, Apollo improperly administered the plan (1) by failing to meet the "clear mutual understanding" provision prior to implementing the plan as required by § 778.114 and (2) by taking wrongful deductions from their wages. Plaintiffs claim back wages and damages as a result.

Prior to trial, Apollo filed a motion in limine to restrict the introduction of evidence regarding non-employment business practices of Apollo and its owners, Jeffrey and Chiquita Reddoch. The trial court granted Apollo's motion in limine. In addition, the parties stipulated that the case would be severed after the completion of all testimony and evidence as to six of the Plaintiffs – Samson, Hays, Manuel, Smith, Landry and Smith – and that all remaining proceedings would be stayed. The case then proceeded to a bench trial. At the

4

close of Plaintiffs' case-in-chief, Apollo moved for judgment under FED. R. CIV. P. 52(c). The trial court granted Apollo's motion in favor of Apollo on all of the claims, determining that Apollo did not violate the FLSA, the Louisiana Wage Statute or any general contract law. The Plaintiffs timely appealed.

The Plaintiffs raise numerous points of error on appeal. These points present four main issues: (1) whether Apollo may utilize the FWW method to pay its employees when the employee works more than sixty hours in a given week but does not receive an additional overtime premium (above one-half the regular rate); (2) even if Apollo may properly use the FWW method, whether it was properly administered by the company; (3) what damages, costs, and attorney's fees are Plaintiffs entitled to, if any; and (4) whether the district court erred in granting Apollo's motion in limine.

**STANDARD OF REVIEW**

Judgment entered under Rule 52(c) is made after the district court has heard all of the "evidence bearing on crucial issues of fact." FED. R. CIV. P. 52(c) advisory committee's notes. Findings of fact made pursuant to a Rule 52(c) judgment are reviewed only for clear error. *Southern Travel Club v. Carnival Air Lines, Inc.*, 986 F.2d 125, 128 (5th Cir. 1993). When the findings of fact are based on determinations regarding the credibility of witnesses, Rule 52 demands "even greater deference to the trial court's findings." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). The trial court's conclusions of law, however, are reviewed *de novo*. *Ivy v. Jones*, 192 F.3d 514 (5th Cir. 1999). Evidentiary rulings are

5

reviewed for"abuse of discretion." *United States v. Townsend*, 31 F.3d 262, 267 (5th Cir. 1994).

## DISCUSSION

The Fair Labor Standards Act generally requires that employees be paid an overtime premium of "time-and-one-half" for all hours worked in excess of forty hours in a week. 29 U.S.C. § 207(a). The Department of Labor provides to employers various methods for calculating overtime compensation to suit different employment needs while still complying with § 207(a). One such method is the Fluctuating Workweek method. 29 C.F.R. § 778.114 (stating the guidelines governing the use of the FWW method). Under the FWW method, the employee receives a fixed salary as compensation for all hours worked by the employee, whether above or below forty hours, as well as an additional overtime premium for each overtime hour. *Id*. § 778.114(a). The overtime premium is calculated by dividing the fixed weekly salary by the number of hours that the employee actually works in a particular week to yield the employee's "regular rate of pay." *Id*. The employee is paid an overtime premium of one-half his regular rate of pay for each overtime hour. This premium is in addition to his fixed weekly salary. Under the FWW method, the employee is effectively earning time-and-a half as overtime pay. However, his hourly wage and the actual amount of overtime pay he earns decreases the more hours that he works. The fixed salary must be sufficient to provide compensation at regular rate meeting the minimum wage requirement of 29 U.S.C. § 206(a)(1), and the overtime premium cannot be less than one-half the regular rate of pay. 29 C.F.R. § 778.114(c). *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir. 1993),

6

*cert. denied*, 510 U.S. 1110 (1994); *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884, 893 (E.D.Tex. 1997).

### I.  May an employer use the FWW method when the employee works more than sixty hours in a given week without paying the employee an additional overtime premium?

The Plaintiffs contend that the trial court erred in determining that the FWW method may be used when an employee works more than sixty hours in a week and no additional overtime premium (above one-half the regular rate) is paid for those hours worked over sixty. Because this issue raises a question of statutory interpretation and application and this is a question of law, we review the district court's ruling on this issue *de novo*.

29 C.F.R. § 778.114(c)  states, in relevant part, that:

> [W]here all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot rely on any application of the fluctuating workweek method.

From this provision, the Plaintiffs extrapolate the contention that if an employee works in excess of sixty hours in a workweek, then the employer must pay the employee an overtime rate of more than the one-half the regular rate of pay minimally required by § 778.114(a). Otherwise, as Plaintiffs argue, the rate of pay for each overtime hour (including the overtime premium) is less than the rate of pay for nonovertime hours, in violation of § 778.114(c). This arguments turns on the definition of the rate of pay for nonovertime hours.

The Plaintiffs assert that dividing the fixed weekly salary by forty hours yields the rate of pay for nonovertime hours referred to in the last sentence of § 778.114(c).  This

7

contention rests on the assumption that the hourly rate for nonovertime hours is determined by dividing the fixed weekly salary by forty hours. Under this assumption, after sixty hours, the rate of pay for each overtime hour is less than the rate of pay for each hour that the employee would have received if he had worked only forty hours.

To illustrate, under the FWW method, an employee who is paid a salary of $500 a week and who works only forty hours, effectively makes $12.50 per hour.[3] In a week where the employee works sixty hours, the overtime rate for hours forty-one to sixty is $12.50 per hour ($8.33 an hour "regular rate,"[4] plus $4.17 per hour as overtime premium[5]). In a sixty-one hour week, however, the employee's overtime rate drops to $12.30 an hour for hours forty-one through sixty-one ($8.20 per hour as "regular rate," plus $4.10 per hour overtime premium). When the employee works eighty hours in a week, the overtime rate drops to $9.38 ($6.25 at hour as "regular rate," plus 3.23 as an overtime premium). As these examples show, under the Plaintiffs' model, the more hours that an employee works, the lower his rate of pay per overtime hour becomes. After sixty hours, unless an overtime premium of greater than one-half the regular rate is paid, the rate of pay for overtime hours is no greater (but is actually less) than the rate of pay that the employee would receive if he had worked no overtime at all, i.e., if he only worked forty hours.

The Plaintiffs assert, therefore, that § 778.114(c) should be read as prohibiting the use

---

[3] $500/40 hours = $12.50 per hour.

[4] Regular rate = fixed weekly salary ($500) divided by total hours worked (60).

[5] The minimally required overtime premium is one-half the regular rate of pay for that week.

8

of the FWW method for weeks where the employee works over sixty hours without receiving more than one-half the regular rate as the overtime premium because in such weeks the "employee is being paid for overtime hours at a rate not greater than that which he receives for nonovertime hours." 29 C.F.R. § 778.114(c). Though the Plaintiffs' interpretation is facially appealing, it is an incorrect reading of section 778.114(c) and the principles of the FLSA.

Section 778.114(a) makes clear that the fixed weekly salary compensates the employee for all hours worked, including overtime hours. Therefore, since the employee already receives 100 % of his regular rate of pay for each overtime hour worked, the time and one-half overtime provision of 29 U.S.C. § 207(a)(1) requires that the employee receive only an addition 50 % of his regular rate for each overtime hour. *Condo v. Sysco Corp.*, 1 F.3d 599, 605 (7th Cir. 1993).

The fallacy of the Plaintiffs' reading of § 778.114(c) lies in their interpretation of the rate of pay for nonovertime hours. Under the Appellant's model, the rate of pay for nonovertime hours erroneously includes overtime wages already built into the fixed salary. As § 778.114(c) makes clear, the fixed salary paid under the FWW method is not intended as compensation only for the forty hours traditionally recognized as nonovertime hours but for all "hours worked each workweek, rather than for working 40 hours or some other fixed weekly work period." 29 C.F.R. § 778.114(a). Accordingly, the fixed weekly salary necessarily includes compensation intended for overtime hours. *See id.* (noting that the FWW method complies with the overtime pay requirement of 29 U.S.C. § 207(a)(1) because

9

overtime hours "have already been compensated at the straight time regular rate").

If a fixed salary includes a premium for overtime hours, then this premium must be deducted before calculating the rate of pay for nonovertime hours so that the actual rate of pay for nonovertime hours is not inflated by the overtime premium. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464, 463-64 (1948) ("When the statute says that the employee shall receive for his excess hours one and one-half times the regular rate at which he is employed, it is clear to us that Congress intended to exclude overtime premium payments from the computation of the regular rate of pay."). As such, Plaintiffs' calculation of the rate for nonovertime hours is artificially high because it includes compensation intended for overtime hours. In order to accurately compare the nonovertime hourly rate of pay to the overtime hourly rate of pay, the portion of fixed salary intended as payment for overtime must be deducted. 29 C.F.R. § 778.114(a).

A reading of § 778.114 suggests that rather than requiring employers to calculate and deduct the overtime premium on a week to week basis for all their employees for the purpose of determining compliance with the overtime requirement, § 778.114 is a *fait accompli*. That is, so long as the regular rate of pay does not fall below the minimum hourly wage requirements, "[p]ayment for overtime hours at one-half [the regular rate] in addition to the salary satisfies the overtime pay requirement" regardless of whether or not they exceed sixty hours. 29 C.F.R. § 778.114(a); *See Aaron v. City of Wichita, Kansas*, 54 F.3d 652, 657 (10th Cir. 1995); *see also Flood v. New Hanover Cnty.*, 125 F.3d 249, 252 (4th Cir. 1997) ("Since the employer has already paid the employee a regular rate of pay for all of the hours that the

employee worked, including the overtime hours, it only has to pay an additional one-half time pay premium for the overtime hours.").

If § 778.114(a) already states the overtime pay requirement is satisfied when the employee is paid one-half times the regular rate for overtime hours in addition to the fixed salary, then what is the proper interpretation of the last sentence of § 778.114(c)?

> [W]here all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot rely on any application of the fluctuating workweek method.

29 C.F.R. § 778.114(c). According to the Plaintiffs, this sentence of § 778.114(c) prohibits the employer from using the FWW method for weeks where the employee works over sixty hours and does not receive more than one-half the regular rate as the overtime premium in addition to the fixed salary. Any other interpretation, the Plaintiffs contend, would render the last sentence of § 778.114(c) surplusage.

A more likely reading of § 778.114(c), however, is that an employer cannot apply the overtime hours that an employee works in one week to another week in the same pay period where the employee works less than forty hours in order to avoid paying the overtime premium. The FWW method and the FLSA determine whether overtime pay is required by examining the number of hours worked in an individual week. Employers, however, may issue pay checks on a bi-weekly or monthly basis – commonly referred to as the "pay period." Therefore, rather than being surplusage, § 778.144(c) is meant to ensure that an employee is always paid an overtime premium for each hour worked over forty hours in a

11

given week, regardless of the number of hours worked in earlier, or later, weeks within the same pay period. *See Cash*, 2 F.Supp.2d at 895 n. 24 (holding that section 778.114(c) is meant to prohibit the practice of cutting salary for a week in which less than forty hours is worked in order to counterbalance compensation for hours over forty worked in another week of the same pay period).

The Court finds that the FLSA and 29 C.F.R. § 778.114(c) does not prevent an employer from using the FWW method where the employee works over sixty hours and the overtime premium paid is not more than 50 % of his regular rate.

## II. Was the FWW method properly administered by Apollo?

The Plaintiffs assert that the trial court erred in its finding that Apollo properly administered the FWW method. First, they argue that the trial court erred in finding that the "clear mutual understanding" prerequisite was met. Second, the Plaintiffs contend that the deductions made to their salaries violated federal and/or Louisiana state law. The Court is unpersuaded by these arguments and affirms the district court's rulings.

## A. Burden of Proof

Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim. In a suit for the payment of overtime wages, the employer claiming that the suing employee is exempt from the overtime requirement has the burden of proving that the employee falls within the claimed exempted category. *Dingwall v. Friedman Fisher Assoc.*, 3 F.Supp. 2d 215, 218 (N.D.N.Y 1998). This Court has never directly addressed the issue of which party – whether the employer or the employee – has the burden of proving

12

compliance with the requirements of the FWW method. We hold that the employee has this burden.

As its name implies, the FWW method is one method of complying with the overtime payment requirements of 29 U.S.C. § 207(a)(1). It is not an exemption to it. *See* 29 C.F.R. § 778.2 (noting that the subpart of 778, which includes the FWW method, does not discuss any specific exemptions to the overtime or minimum wage payment requirements of the FLSA); *Griffin v. Wake County*, 142 F.3d 712, 715 (4ᵗʰ Cir. 1998); *but see Dingwall v. Friedman Fisher Assocs.*, 3 F.Supp. 2d 215, 221 (N.D.N.Y. 1998) (determining that the FWW is "an exception to the normal rights of the employee and thus the employer bears the burden of proving that ll the requirements for applying the method are present"). Therefore, the employee bears the burden of proving that the employer failed to properly administer the FWW method. *Cash*, 2 F.Supp.2d at 896 ("The employee alleging an improper application of the fluctuating workweek method bears the burden of proof.").

## B. Clear Understanding Requirement

The Plaintiffs contend that the trial court erred in finding that the "clear understanding" criterion required by § 778.114 was met. They assert two points here. First, they claim that Apollo misrepresented the number of hours that the employees would be called upon to work, specifically that Apollo made misrepresentations about comparable amounts of time off. For example, they argue that Apollo told employees that if an employee was required to work five days on the rig, then he would get a comparable five days off the rig. Second, the Plaintiffs assert that Apollo failed to disclose that it was not obligated to pay

the employees the fixed salary for weeks in which the employee was not called upon to work at all. They argue that they could not have formed the clear understanding of the FWW method as a matter of law given these misrepresentations.

Again, these arguments are unpersuasive. Section 778.114 is specific as to what the employee must understand before the FWW method may be used. It only requires that "[t]here is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 C.F.R. § 778.114(a); 29 C.F.R. § 778.114(c) (prohibiting the use of the FWW method "unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked"); *see, e.g.*, *Griffin*, 142 F.3d at 716 (reading the clear understanding requirement as only encompassing the fact that the fixed salary was compensation for all hours that the employee worked) ; *Cash*, 2 F. Supp. 2d at 907 (adopting and applying this standard of the clear mutual understanding requirement). We decline to expand the "clear understanding" requirement of section 778.144 to include the details cited by the Plaintiffs. *See, e.g.*, *Griffin*, 142 F.3d at 717 (finding that the FLSA does not require that the "employer hold an employee's hand and specifically tell him or her precisely how the payroll system works"). Section 778.114 does not require that the employee know the hours expected to be worked, that the fixed salary is not be paid for weeks where the employee performs no work, or any other details of how

the FWW is administered. *Baily v. County of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996) (determining that neither section 778.114 nor the FLSA "in any way indicates that an employee also must understand the manner in which his or her overtime pay is calculated").

In addition, even taking into account the misrepresentations alleged by the Plaintiffs, the Court finds no basis for disturbing the trial court's finding that the "clear mutual understanding" criterion was satisfied. These allegations of misrepresentation were already considered by the trial court and soundly rejected. In fact, the trial judge determined that Apollo went above and beyond what was required by § 778.114. The evidence in the record indicates that Apollo took the necessary steps to explain the FWW method to employees. The record is replete with testimony that Kelly Boudreaux and Ben Stonecipher explained to the Plaintiffs that they would be paid a fixed salary regardless of the hours that they were called on to work. In certain instances, Boudreaux and Stonecipher used formula sheets to illustrate this point. After hearing this testimony and weighing the credibility of the testimony, the district judge found that Apollo took every opportunity to explain the fixed salary provision of the FWW method to the Plaintiffs. The evidence shows that the Plaintiffs did have or should have had a clear understanding that they would be paid a fixed salary under the FWW method. And Plaintiffs cite to nothing in the record sufficient to show that the trial court's findings were clearly erroneous. To the contrary, the evidence in the record adequately supports the trial court's findings that Apollo met the clear understanding requirement.

**C. Did Apollo improperly administer the FWW method by taking deductions**

**from the employees' fixed salaries for willful absences?**

**1.  Louisiana State Law**

Plaintiffs next argue that the trial court erred in finding that Apollo's practice of making deductions from the employees' salaries for willful absences was allowed by federal and state law.  Plaintiffs point to LA. REV. STAT. ANN. § 23:635.  Section 23:635 states, in relevant part, that:

> No person, acting either for himself or as agent or otherwise, shall assess any *fines* against his employees or deduct any sum *as fines* from their wages.

LA. REV. STAT. ANN. § 23:635 (West 1999) (emphasis added).  Because § 23:635 is penal in nature, Louisiana jurisprudence requires that it must be strictly construed.  *See*, *e.g.*, *Hanks v. Shreveport Yellow Cabs, Inc.*, 187 So. 2d 817, 819 (La. App. 1939).

As this statute makes clear, not all deductions are prohibited; only fines or deductions made as fines are prohibited.  The term "fines" has a very specific and limited meaning.  "A fine, within the meaning of [section] 23:635, is a pecuniary penalty imposed for the violation of some law, rule or regulation." *Brown v. Navarre Chevrolet, Inc.*, 610 So. 2d 165, 170 (La. App. 1992).  The few cases discussing § 23:635 restrict employers from levying fines on the employee (via deductions from wages) for failing to follow workplace procedures and regulations.  *Brown*, 610 So.2d at 168, 170 (finding that deductions made because employee arrived late for meetings, and parked company car in wrong place were fines and, therefore, prohibited by § 23:635); *Stoll v. Goodnight* Corp., 469 So.2d 1072, 1077 (La. App. 1985) (determining that requiring employee to reimburse employer for bad checks written by

16

customers was not a fine where agreement existed between parties that employee would cover such losses); *Hanks*, 187 So. at 819 (holding that employer's charges against driver-employee for damages to a cab were not fines because the charge was used to cover cost of repair to cab and employee agreed to be responsible for such damage).

Under a strict construction of the term fines, the deductions made by Apollo for willful absences or tardiness do not constitute a fine so as to be prohibited by Louisiana law. The deductions were not "arbitrarily fixed and assessed" as punishment against the employee for violating a work place rule or regulation. *Hank*, 187 So. at 819 (clarifying the characteristics that distinguish a fine from a lawful deduction). Rather than acting as a fine or punishment, the deductions allowed Apollo to avoid paying an employee for wages to which he was not otherwise entitled. While failing to show up for work when called is certainly a "violation" of a workplace "rule" requiring attendance, no authority exists in either § 23:635 or 29 C.F.R. 778.114 requiring the employer to pay employees for times which the employee intentionally skips work. Therefore, § 23:635 did not prohibit Apollo from making deductions from the Plaintiffs' salaries for willful absences.

### 2. Federal Law

Section 778.144 itself is silent on the issue of whether such deductions are permissible under the FWW method. The Plaintiffs' only support for their contention that deductions are not permitted under the FWW method is DOL interpretive letter No. 479, written in 1966. Letter No. 479 states, in relevant part, that "[d]eductions for less than a week, whether for illness, personal business, or other reasons, may not be made under [the FWW] method

17

of compensation." Later DOL opinion letters and materials, however, state otherwise. DOL Opinion Letter No. 988, written in May 1969, states that under the FWW method "occasional disciplinary deduction for wilful absence or tardiness may be made." This letter tracks the language of the DOL's FIELD OPERATIONS HANDBOOK, published in 1967, regarding disciplinary deductions under the FWW method. The 1967 Handbook recognizes that an employer may make "occasional disciplinary deductions for wilful absence or tardiness." DEPARTMENT OF LABOR, FIELD OPERATIONS HANDBOOK § 320b04b (1967). Furthermore, a 1982 letter – referred to as the Otter Letter – states that "[o]ccasional deductions may be made [from an employee's salary] as a disciplinary measure for willful absence or tardiness." The problem here is resolving which of the conflicting DOL pronouncements should apply.

When faced with an issue involving statutory construction, federal courts show "'great deference to the interpretation given the statute by the officers or agency charged with its enforcement.'" *Biggs v. Wilson*, 1 F.3d 1537, 1543 (9th Cir. 1993) (*quoting Udall v. Tallman*, 380 U.S. 1 (1965). Interpretive and opinion letters by the Department of Labor do not *per se* bind the court. Such materials, however, do "constitute a body of experienced and informed judgment" and the court will give these materials "substantial weight." *Flood*, 125 F.3d at 253 (citation omitted).

The Plaintiffs correctly point out that the 1969 and 1982 letters are unpublished pronouncements of the DOL's interpretation of the FWW method. They further contend that since the letters are unpublished this Court should not rely upon them. But the fact that they are unpublished does not dismiss entirely the persuasive value and insight that they may

18

provide this Court, especially in light of their consistency with the Field Operation Handbook. Unpublished opinion letters by a government agency still reflect the agency's interpretation and intended application of the regulation. The Court finds that the survey of the available material from the DOL indicates that occasional deductions for wilful absence or tardiness are not prohibited under the FWW method. *See Cash*, 2 F.Supp. 2d at 895 ("[The FWW method] however, in no way bars 'occasional' deductions from salary for 'wilful absences or tardiness,' so long as the full salary figures in the calculation of the regular rate and the amount of salary remaining after such reductions supports an average hourly rate at least equal to the applicable minimum wage.").

In addition, deductions for willful absences or tardiness do not run afoul of the guidelines governing the FWW method. The central feature of the FWW method is that the fixed salary is "straight time pay for whatever hours [the employee] is called upon to work in a workweek." 29 C.F.R. § 778.114(a). This does not mean, however, that the employer must pay the full salary even though the employee decides not to work all the hours that he is called upon to work. To hold otherwise would allow for a tremendous abuse of the FWW method by employees. Beyond Interpretive Letter No. 479, which the Court finds unpersuasive in light of later pronouncements by the DOL, the Plaintiffs provides no support for its argument that deductions for willful absences is not allowed under the FWW method.

The Plaintiffs further argue that even if "occasional deductions" are permitted, the deductions made by Apollo were improper because they were made without adequate investigation or when the employee was not actually wilfully absent or tardy. Again, the

Court finds no basis to reverse the district court's careful findings of fact on this issue. In each instance, it found that the employee in question had been wilfully absent, that Apollo had adequately investigated the circumstances surrounding the employee's absence, and that Apollo was justified in making the deductions. These conclusions were made in large part based on the district court's assessment of the credibility of the witnesses and the Plaintiffs. In fact, the court emphasized that the testimony of the Plaintiffs appeared contrived, orchestrated, and wholly unbelievable. As such, we give the determination even greater deference. Nothing in the record indicates that these findings were clearly erroneous.

### IV.  Are the Plaintiffs entitled to attorney's fees, penalties, or liquidated damages under either federal or Louisiana state law?

Even though they were unsuccessful on all of their claims, the Plaintiffs contend that they should be awarded attorney's fees, penalties, and liquidated damages under federal and state law. Their argument is predicated on the fact that Apollo tendered checks totaling $487.89 to five of the Plaintiffs midway through the trial. Ostensibly, theses checks were payment for hours worked by the employees, but which the Plaintiffs claimed Apollo failed to credit. The Plaintiffs argue that these payments amount to an admission of liability on those claims for back. As a result of this implied admission, Plaintiffs contend that they are due attorney's fees, penalties, and liquidated damages under federal and Louisiana state law. The Court disagrees.

The trial record and relevant case law clearly indicate that Apollo's payments did not constitute any admission of liability. The record makes clear that Apollo tendered payment

20

in order to avoid an additional day and a half of trial that would have been needed to adjudicate the claims for uncredited overtime hours. In making the payments, Apollo made clear that the payments were not an admission of any liability or waiver of any defenses. The Plaintiffs likewise stipulated that their receipt and acceptance of the payments did not in any way dispose of or otherwise decide the merits of their claims for the uncredited overtime hours. Clearly, both parties agreed that Apollo's payment in no way determined the merits of the Plaintiffs' claim.

The Court finds no reason to disregard the express stipulation and agreement of the parties and to now infer an admission of liability on the part of Apollo. *McClosky v Eckart*, 164 F.2d 257, 259 (5th Cir. 1947) (refusing to infer that overtime wages were owed by the employer from the fact that the employer made a compromise settlement payment on this claim but expressly stipulated that payment was not an admission of liability). The district court found for Apollo on all of the Plaintiffs' claims. It found that Apollo did not violate the FLSA, Louisiana law or general contract law either by using the FWW method or in its administration of it. Without any admission of liability from Apollo, the Plaintiffs' arguments for attorneys fees, liquidated damages, and penalties quickly lose all merit.

## A. Attorney's fees

Despite their failure to prevail on any of its claims, the Plaintiffs assert that because they were forced to file suit before Apollo made payment for uncredited time, an award of attorney's fees is appropriate under 29 U.S.C. § 216(b) and LA. REV. STAT. ANN. § 23:632. However, this contention misapplies both of these statutes. First, 29 U.S.C. § 216(b) allows

21

an award of attorney's fees only "in addition to any judgment awarded to the plaintiff." Here, attorney's fees are not available because the Plaintiffs failed to prevail on any of their claims. Similarly, under§ 23:632, an award of reasonable attorney's fees is mandatory when an employee brings a "well-founded" suit for unpaid wages. A suit is "well-founded" only if the employee receives a judgment in his favor. *See Hebert v. Insurance Ctr. Inc.*, 706 So. 2d 1007, 1014 (La. App. 1998); *Loup v. Louisiana State Sch. for the Deaf*, 229 So. 2d 689, 694 (La. App. 1999) ("Suits in which the recovery of back wages is *granted* are considered 'well-founded.'") (emphasis added); *Byrnes v. Orkin Exterminating Co.*, 562 F.Supp. 892, 894 (E.D. La. 1983) ("Because no wages have been found to be due, this claim cannot be considered a 'well-founded' suit."). Clearly, under Louisiana law, Plaintiffs are not entitled to attorney's fees under § 23:632 since they did not bring a "well-founded" suit as evidenced by their failure to prevail on any of their claims.

## B. Liquidated Damages

If it is found that the employer failed to properly pay wages to its employees, the employer may be liable for liquidated damages in an amount equal to the amount of unpaid wages. 29 U.S.C. § 216(b). An employer may still avoid liquidated damages if the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not acting in violation of the FLA. 29 U.S.C. § 260. It is within the sound discretion of the trial court whether or not to award liquidated damages in the event of a good faith showing by the employer. 29 U.S.C. § 260. Plaintiffs fail to show that the trial court abused its discretion in not awarding them liquidated damages.

22

First, the trial court ruled that Apollo did not violate either the FLSA, Louisiana law or general contract law. Plaintiffs failed to make the predicate showing that Apollo failed to properly pay wages to the Plaintiffs. Even if this Court assumes *arguendo* that Apollo violated the FLA., the district court found that Apollo was acting in good faith and, in its discretion, decided not to impose liquidated damages. The record supports a finding that Apollo had reasonable grounds to believe that it was complying with the FLSA. For instance, unlike the cases cited on by the Plaintiffs where liquidated damages were found warranted because the employer failed to change its policy after it became aware of its violations, Apollo took affirmative steps to comply with the FLSA. It consulted with the DOL, specifically with Don Strobel, the Assistant Director for the DOL, to devise a salary scheme that would comply to all the relevant provisions of the FLSA. It was after this consultation that Apollo implemented the FWW method. The trial judge made the expressed determination that Apollo made every reasonable effort to comply with the overtime requirements of the FLA. The DOL investigations cited by Plaintiffs never led to an actual finding of a violation of the FLA. Rather, the investigations only led to a letter being sent to Apollo's employees informing them that they might have a claim for back wages. Given the evidence on the record, the Plaintiffs fail to show that the trial court was clearly erroneous in deciding not awarding liquidated damages. *See Lee v. Coahoma County, Miss.*, 937 F.2d 220, 226-27 (5th Cir. 1991)("If the district court finds that employer's action which violated the FLSA was taken in good faith, which good faith was supported by reasonable grounds for believing that the actions complied with the FLSA, it may choose not to award

23

liquidated damages.").

## B.  Penalty Wages

In order to recover penalty wages under LA. REV. STAT. ANN. § 23:632, the employee must prove (1) that wages were due and owing, (2) that a demand for payment was made at the place where the employee is usually paid, and (3) that the employer failed or refused to pay after the employee's demand. *Hughes v. Cooter Brown's Tavern, Inc.*, 591 So.2d 1334, 1337 (La. App. – 1992).   Because it is a penal statute, section 23:632 is strictly construed. *Id*.  Plaintiffs are not entitled to penalty wages because they failed to make the requisite showing under § 23:632.  As noted above, Plaintiffs never established that back wages were owed to them by Apollo and such proof cannot be implied from Apollo's tender of payments to some of the Plaintiffs.

## IV.  Motion in Limine

The Plaintiffs' final argument on appeal is that the district court erred in excluding from trial impeachment evidence.  Specifically, the Plaintiffs sought to introduce evidence regarding alleged environmental violations by Apollo, improper tax deductions made by Apollo and its owners, and Apollo's violation of local building codes.  None of these alleged incidents led to any formal conviction.  Plaintiffs claim that the excluded evidence would have called the credibility of several of Apollo's witnesses into question.  This  Court reviews a trial court's evidentiary rulings for abuse of discretion. *Townsend*, 31 F.3d at 267.

FED. R. EVID. 608(b) states:

> Specific instances of the conduct of a witness for the purpose of

24

> attacking or supporting the witness' credibility, other than conviction of crime as provided by rule 609, may not be proved by extrinsic evidence.

By its language, Rule 608(b) clearly prevents the Plaintiffs from presenting evidence of specific instances of untruthful conduct by certain Apollo witness to show that these witnesses had a propensity for untruthfulness. 28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6117 (1993) (recognizing that under the proper application of Rule 608(b) extrinsic evidence of specific instances of bad conduct is made inadmissible when offered to prove a witness's character for untruthfulness). In addition, FED. R. EVID. 403 allows the district court to exclude relevant evidence if "its probative value is substantially outweighed . . . by considerations of undue delay [or] waster of time." Here, the district court found that the evidence had little probative value to the issue of the witnesses' credibility and virtually no relevance to the material issues in the case. In addition, proof of these collateral issues would have likely required many additional days of testimony without shedding any light on the central issue of the case – Apollo's use of the FWW method. In light of Rules 403 and 608(b), even if the evidence that Plaintiffs wished to introduce may have been relevant in determining the credibility of Apollo's witnesses, the district court's decision to exclude the evidence did not amount to "manifest error" so as to constitute an abuse of discretion. *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) ("The district court may under Rule 608(b) determine if evidence is probative of truthfulness, and under 403 exclude even probative evidence if the prejudicial effect outweighs the probative value."); *cf. United States v. Miller*, 91 F.3d 1160,1163 (8th Cir.

1996) (affirming district court's ruling to exclude evidence that witness alleged bribed police officer, which was unrelated to the charged offense).

## Conclusion

Consolidated with this appeal are several appeals and motions. In light of the consolidation of the appeals and the Court's above opinion, Appellants' appeals of the district court's rulings on the motion in limine and on the motion for partial summary judgment along with Appellee's Motion to Dismiss these two appeals are DENIED as moot. In addition, Appellants' motion for attorney's fees and sanctions is DENIED.

For the above stated reasons, the judgment of the district court is AFFIRMED.