UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-30218

_____


GEORGE C. SAMSON III, ET AL,

                                    Plaintiffs,

                  v.

    APOLLO RESOURCES INC., Etc.; ET AL,

                                    Defendants,

           APOLLO RESOURCES INC.,
    doing business as Apollo Services Inc.,

                                    Defendant - Third
                                    Party Plaintiff - Cross
                                    Defendant - Appellee,

                  v.

    QBE INTERNATIONAL INSURANCE, LIMITED.,

                                    Third Party Defendant -
                                    Cross Claimant -
                                    Appellant.

_____

     Appeal from the United States District Court
  For the Western District of Louisiana, Lafayette
                   (98-CV-62)

_____
                 March 20, 2003



Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.*

---

    * Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

W. EUGENE DAVIS, Circuit Judge:[**]

Apollo Resources, Inc. ("Apollo") seeks recovery against QBE International Insurance, Limited ("QBE"), under its Employment Practices Liability Insurance Policy. Apollo seeks to recover defense costs it incurred in defending an action brought by its employees for overtime compensation which QBE declined to defend. The district court found that QBE owed Apollo a defense and granted partial summary judgment in favor of Apollo on this claim. For the reasons that follow, we conclude that the policy provides no coverage for the claims asserted by Apollo's employees. We, therefore, vacate the district court's grant of partial summary judgment in favor of Apollo and remand the case with instructions to enter judgment in accordance with this opinion.

I.

Apollo asserted a third party demand against QBE seeking reimbursement of defense costs incurred in Apollo's successful defense of this suit[1] by thirty of its former employees. Apollo's employees brought the suit to recover overtime compensation which Apollo defended after QBE denied coverage. The employees alleged that Apollo wrongfully avoided payment of

---

[**]Judge Dennis concurs in the judgment only.

[1] The Fifth Circuit affirmed the district court's judgment in favor of Apollo in the underlying suit. Samson v. Apollo Res., Inc., 242 F.3d 629 (5th Cir. 2001).

overtime by its improper use of a fluctuating workweek ("FWW")[2] or sliding scale method of calculating overtime pay. The Employment Practices Liability policy QBE issued is a "claims made" policy effective from May 21, 1997, to May 21, 1998.

In 1995, the Department of Labor began an investigation into Apollo's use of the FWW calculation method.[3] As a result of this investigation, Norman Landry, a former Apollo employee, wrote a letter on January 25, 1996, to Apollo demanding payment of overtime wages allegedly due as a result of Apollo's improper use of the FWW method of calculating overtime wages.

On February 6, 1996, James Meche filed a complaint in district court seeking to recover overtime wages due and payable

---

[2]    Regulations promulgated by the Department of Labor under the F.L.S.A. authorize employers to use various methods of calculating overtime compensation to suit different employment needs. The FWW is one such method. 29 C.F.R. § 778.114. As we explained in Samson:

> Under the FWW method, the employee receives a fixed salary as compensation for all hours worked by the employee, whether above or below forty hours, as well as an additional overtime premium for each overtime hour. The overtime premium is calculated by dividing the fixed weekly salary by the number of hours that the employee actually works in a particular week to yield the employee's "regular rate of pay." The employee is paid an overtime premium of one-half his regular rate of pay for each overtime hour. This premium is in addition to his fixed weekly salary.

242 F.3d at 633.

[3]    The Department of Labor ruled Apollo's wage calculation method to be legal.

-3-

pursuant to the Fair Labor Standards Act ("F.L.S.A."), 29 U.S.C. § 203 et seq., alleging that Apollo's use of the FWW method was an illegal practice. In his Complaint, Meche asked the district court to appoint him as class representative for other similarly situated individuals. The district court dismissed Meche's suit without prejudice on August 8, 1997.

Samson and Smith filed the underlying suit against Apollo on May 27, 1997 ("Samson suit"). A total of twenty-eight additional plaintiffs, including Landry and Meche, joined the suit.[4] The plaintiffs in this suit ("Plaintiffs") sought unpaid wages, safety bonuses, attorney's fees and punitive damages resulting from Apollo's alleged illegal application of the FWW method. In March 1988, the district court consolidated the suit with the related Norton and Weaver v. Apollo ("Norton suit") case and declared a "collective action." The district court tried the claims of six of the Plaintiffs and granted Apollo's Motion for Judgment as a Matter of Law at the close of the Plaintiffs' case. The Fifth Circuit affirmed.[5]

The district court severed Apollo's third party demand

---

[4]     Thirty-six former employees joined the suit, but six were dismissed or withdrew at various times.

[5]     The district court severed and stayed the claims of the remaining twenty-four Plaintiffs pending the outcome of this trial. Following the Fifth Circuit's decision, the remaining twenty-four Plaintiffs dismissed their claims with prejudice in stipulated judgments approved by the district court as part of a settlement agreement with Apollo.

against QBE from the underlying suit.  After this court affirmed the district court's judgment in favor of Apollo in the underlying litigation, the district court proceeded to consider the issue of coverage between Apollo and QBE.  The district court granted partial summary judgment in favor of Apollo and concluded that QBE owed a defense to Apollo on the underlying suit.  The court also entered judgment in favor of Apollo in the amount of $362,362.49 for costs and expenses incurred.

Following entry of the district court's Order and Reasons for Judgment, QBE requested certification of an interlocutory appeal under 28 U.S.C. § 1292(b).  Apollo asked the district court to certify the grant of partial summary judgment as a partial final judgment appealable under Federal Rule of Civil Procedure 54(b).  The district court inadvertently entered the § 1292(b) certification, but later withdrew the certification and entered judgment under Rule 54(b).

## II.

QBE argues first that the district court erred in certifying the partial summary judgment as a partial final judgment appealable under Federal Rule of Civil Procedure 54(b) rather than certifying it for interlocutory appeal under 28 U.S.C. § 1292(b).  We review this question de novo.

Federal Rule of Civil Procedure 54(b) allows a district

court to expressly direct entry of a final judgment on "one or more but fewer than all of the claims or parties" to a suit "upon an express determination that there is no just reason for delay." FED. R. CIV. P. 54(b). QBE argues that a Rule 54(b) certification is inappropriate in this case because there was no final disposition of a claim. QBE argues that one of its affirmative coverage defenses - that Apollo made a material misrepresentation in its policy application - was not ripe for decision and precluded the district court's entry of judgment on Apollo's claim for defense costs. QBE argues that it expressly reserved this affirmative defense for trial, and Apollo did not specifically request summary judgment on this issue. QBE relies on Sharlitt v. Gorinstein, 535 F.2d 282 (5th Cir. 1976), in support of its position that it was inappropriate for the district court to enter summary judgment sua sponte without providing adequate notice and opportunity for QBE to present its argument.

QBE's reliance on Sharlitt is misplaced. Apollo requested a judgment from the district court ordering QBE to honor its defense obligations, and ordering QBE to reimburse Apollo for the attorney's fees and litigation costs that Apollo has incurred to date in defense of the underlying suit. Such a request by its terms required the district court to consider all defenses QBE might have to coverage, including QBE's material

-6-

misrepresentation defense.

The party moving for summary judgment bears the initial burden of production to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met his initial burden of production, the burden shifts to the nonmovant to set forth "specific facts showing that there is a genuine issue for trial." Id. at 324. QBE failed to introduce evidence of Apollo's material misrepresentation in opposition to Apollo's Motion for Partial Summary Judgment on the issue of QBE's duty to defend and reimburse Apollo for defense costs. It was QBE's duty to come forward with evidence to demonstrate that a material issue of fact existed on its affirmative defense, requiring a trial on the merits. QBE could not simply "reserve" this defense to coverage and thus shield itself from an adverse summary judgment on the coverage issue.

The district court's grant of partial summary judgment in favor of Apollo resolved Apollo's claim that QBE was obliged to defend Apollo in the Samson litigation and reimburse Apollo for its defense costs.[6] The district court properly entered a Rule 54(b)final judgment certification.

III.

---

[6]    Apollo's claim for bad faith failure to provide coverage is still pending in the district court.

-7-

QBE argues next that the district court erred in granting summary judgment in favor of Apollo and ruling that QBE's policy required QBE to furnish Apollo a defense and reimburse Apollo for defense costs already incurred in defending the Consolidated Action Suit. We review the district court's grant of partial summary judgment de novo. See Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2001).

In determining whether coverage for defense costs is provided under a policy, Louisiana law - which controls this issue - adopts the Eight Corners Rule and requires us to compare the allegations in the complaint to the policy provisions. As we explained in Alert Center, Inc. v. Alarm Protection Services, Inc., 967 F.2d 161, 163 (5th Cir. 1992):

> Under Louisiana law, an insurer has a duty to defend its insured unless the allegations in the complaint unambiguously exclude coverage. Meloy v. Conoco, Inc., 504 So. 2d 833, 838 (La.1987) (citing American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So. 2d 253 (1969)); Jensen v. Snellings, 841 F.2d 600, 612 (5th Cir.1988) (applying Louisiana law). Coverage is determined by comparing the allegations in the complaint with the terms of the policy, and the court is to look only at the face of the complaint and the insurance contract in reaching this determination. Jensen v. Snellings, 841 F.2d at 612; Scarborough v. Northern Assurance Co. of America, 718 F.2d 130, 134 (5th Cir.1983) (applying Louisiana law). The insurer has a duty to defend its insured if the complaint discloses the possibility of liability under the policy. Meloy v. Conoco, 504 So. 2d at 839. Thus, if the complaint alleges a single claim against the insured that is covered by

-8-

the policy, the insurer must defend the entire lawsuit, even those claims clearly excluded from coverage. <u>Montgomery Elevator Co. v. Building Engineering Services Co., Inc.</u>, 730 F.2d 377, 382 (5th Cir.1984) (applying Louisiana law).

"The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence." <u>Houghtaling v. Richardson</u>, 800 So.2d 1012, 1014 (La. Ct. App. (5th Cir.) 2001).  If the complaint asserts facts that, if proven, establish both  coverage under the policy and liability to the plaintiff, the insurer must defend the insured regardless of the outcome. <u>Czarniecki</u>, 230 So.2d at 259.

Under the policy, QBE agreed:

> To pay on behalf of the Insureds Loss that the Insureds are legally obligated to pay as a result of any Claim first made against the Insureds during the Policy Period for a Wrongful Employment Practice, provided always that such Wrongful Employment Practice occurs:
>
> 1.    During the Policy Period, or
>
> 2.    Prior to the effective date of this Policy, provided further that the Insured had no knowledge prior to the effective date of this Policy of any matter, fact or circumstance that would cause a reasonable person to believe that a Claim for such Wrongful Employment Practice might be made.

The term "Wrongful Employment Practice" is defined in the policy[7]

---

[7] The policy defines "Wrongful Employment Practices" to mean: any actual or alleged:
1.    Wrongful  Employment  Termination  by  an Insured of an Employee;

-9-

and limits covered acts to specific types of conduct by the employer. The only conduct relevant to this case included in the definition is "employment-related misrepresentation by an Insured."

QBE argues that coverage for Apollo's defense costs is excluded by Exclusion H of the policy which denies coverage for Wrongful Employment Practices that relate back to claims made before the effective date of the policy and Interrelated Wrongful Employment Practices.[8] Consideration of QBE's argument led us to

---

2. Discrimination by an insured against an Employee or an applicant for employment;
3. Sexual harassment by an Insured of an Employee;
4. Adverse employment action in violation of the whistle blower provisions of any federal, state or local law;
5. False arrest, libel, slander or defamation, invasion of privacy, assault or battery by an Insured of an Employee, when asserted in connection with a Claim within III.O.1. through III.O.4 above;
6. Employment-related misrepresentation by an Insured; or
7. Negligent hiring, supervision, promotion, demotion or retention.

[8] Exclusion H denies coverage for any claim made against an Insured:

Based upon or directly or indirectly arising out of:
1. Any Wrongful Employment Practice or any matter, fact or circumstance that has been the subject of any claim made prior to the effective date of this Policy or of any notice given during any prior policy;
2. Any other Wrongful Employment Practice which, together with a Wrongful

consider whether the terms of the policy provided coverage for defense costs absent this exclusion. After the issue of coverage was raised in more detail at oral argument, the parties were asked to submit additional briefs directly addressing the application of the Eight Corners Rule and the exclusions in the policy's "Loss" provision to this case.

In its original brief to this court, Apollo did not rely on any misrepresentation allegation the Plaintiffs made in their Complaint to establish coverage or a duty to defend. Rather, Apollo pointed to the deposition testimony of former Apollo employees to support their contention that these plaintiffs based their claim in part on "misrepresentations." When asked by the court following argument to submit a supplemental brief citing specific allegations in the Plaintiffs' Complaint that alleged misrepresentations, Apollo points to four paragraphs from the Complaint,[9] the deposition testimony of some of the Plaintiffs

Employment Practice that has been the subject of any claim or notice identified in H.1. above, would constitute Interrelated Wrongful Employment Practices.

[9] In its supplemental brief, Apollo points to the following portions of the Plaintiffs' Fourth Amended Complaint as alleging employment-related misrepresentations:

21.
The underpayment for the plaintiffs misuse of the "sliding scale" method of making overtime payments.

and our opinion in <u>Samson v. Apollo Resources, Inc.</u>, 242 F.3d 629 (5th Cir. 2001).

Federal courts liberally construe the complaint to determine if it asserts claims that are unambiguously excluded from coverage. <u>See</u> <u>Stone Petroleum Corp. v. Ins. Co. of N. Am.</u>, 961 F.2d 90, 92 (5th Cir. 1992). Apollo argues that, liberally construed, the Plaintiffs' Complaint alleges employment-related misrepresentations. We disagree. The Plaintiffs alleged that Apollo underpaid the amount of regular and overtime wages due Plaintiffs in violation of the Fair Labor Standards Act as a result of Apollo's misuse of the FWW method. Plaintiffs sought unpaid compensation, safety bonuses and liquidated damages, attorney's fees and pre-judgment interest under the F.L.S.A. and penalties for failing to promptly pay wages due. The complaint filed in the <u>Norton</u> suit alleged nearly identical claims. As QBE properly points out, misrepresentation is not a required element

---

22.
The defendant's employee contracts for fluctuating hours, as used by the defendant and applied to these plaintiffs, violated the Fair Labor Standards Act's requirements for fluctuating hours employee contracts.

24.
The misuse of the sliding scale method and fluctuating hours contracts was willful.

25.
The defendant also withheld "safety" bonuses from the plaintiffs.

of an F.L.S.A. wage claim.  See 29 C.F.R. 778.0 et seq.  The only allegation that even arguably could include misrepresentations is the assertion that Apollo misused the sliding scale wage method. However, Apollo candidly admits in its letter brief that the misuse of the sliding scale "does not fall within the definition of 'wrongful employment practice' in the QBE policy."  Liberally construing the Plaintiffs' Complaint, we find no allegations in the complaint that Apollo made any misrepresentations regarding their employment that would give rise to coverage in this case.

Apollo also points to facts developed outside the pleadings to support coverage.  The court requested that Apollo provide support for its position that we may consider facts developed in the Plaintiffs' deposition testimony introduced at trial in determining whether QBE owed a duty to defend the underlying suit.  Apollo simply points to Fed. R. Civ. P. 15(b) which allows amendment of the pleadings to conform to the evidence introduced at trial.  Apollo provides no authority to support its position that facts outside the complaint may be considered under the Eight Corners Rule.

All of the Louisiana cases we have found discussing this issue definitively state that Louisiana law does not permit reliance on evidence extrinsic to the complaint to demonstrate the insurer's obligation to defend. See Houghtaling, 800 So.2d at 1014; Stone Petroleum Corp. 961 F.2d at 92; KLL Consultants, Inc.

-13-

v. Aetna Cas. & Sur. Co., 738 So.2d 691, 696 (La. App. (5th Cir.) 1999). In Singleton v. United Tugs, Inc., 710 So.2d 347 (La. App. (4th Cir.) 1998), the court refused to impose a duty to defend when the insurance company made the decision that it owed no duty to defend based on the plaintiff's failure to allege covered claims in his petition, even though the plaintiff produced evidence at trial that triggered coverage. Adopting a rule that would impose a duty to defend based on evidence arising during trial would run counter to the sensible bright line rule which allows insurance companies to make a decision on their duty to defend at the outset of litigation based on the allegations of the complaint.

Because Plaintiffs asserted no claim that was covered by QBE's policy, QBE owed no duty to defend Apollo in the underlying suit. See Czarniecki, 230 So.2d at 259. Because QBE had no duty to defend, Apollo, it also has no duty to reimburse Apollo for the defense costs Apollo spent defending the underlying suit.[10]

V.

For the reasons stated above, we conclude that the district

---

[10]  Apollo argues in its letter brief that the Eight Corners Rule is irrelevant to the resolution of this case because "QBE's policy contains an independent contractual duty on the part of QBE to reimburse Apollo for its defense costs, a duty that is not dependant on the obligation to defend or the 'Eight Corners Rule'." Apollo relies on dicta in FDIC v. Booth, 824 F. Supp. 76 (M.D. La. 1993) that interprets a particular policy provision that is not pertinent to this case.

court erred in granting partial summary judgment in favor of Apollo on the issue of QBE's duty to defend and to reimburse Apollo for defense costs, and we must VACATE that judgment. Given our conclusion on the coverage issues, Apollo's claim for penalties for willful failure to provide coverage must also fall. We therefore REMAND this case to the district court with instructions to enter judgment consistent with this opinion.

VACATED and REMANDED.