Michael M. GARCIA, Plaintiff,

v.

**ALLSUP'S CONVENIENCE STORES, INC., a New Mexico corporation, Defendant.**

No. CIV. 00–1571 BB/DJS.

United States District Court,
D. New Mexico.

Sept. 28, 2001.

LeeAnn Ortiz, Albuquerque, NM, for Plaintiff.

Marcia E. Lubar, Albuquerque, NM, for Defendant.

## OPINION

BLACK, District Judge.

THIS MATTER comes before the Court on the parties' cross-motions for summary judgment on the issue of whether the wage plan under which an employer paid its former employee violates the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and on the employer's motion for summary judgment on the damages the employee may recover should he prevail on the liability issue. *See* Plaintiff's Motion for Partial Summary Judgment (Doc. 17), filed July 11, 2001, and Defendant's Motion for Summary Judgment (Doc. 21), filed July 19, 2001. The Court has examined the parties' submissions and the relevant legal authorities, and, for the reasons set forth below, finds that the parties' cross-motions for summary judgment on the liability issue should be DENIED, and that the employer's motion for summary judgment on the damages issue should be GRANTED.

## I.

### FACTUAL BACKGROUND

Plaintiff Michael M. Garcia ("Employee") brings this suit under Section 207 of the Fair Labor Standards Act ("Act") to recover overtime pay allegedly due him from his former employer, Defendant Allsup's Convenience Stores, Inc. ("Employer"). The Act covers workers like Em-

ployee who work for business enterprises like Employer that are engaged in interstate commerce. *See* 29 U.S.C. § 207(a)(1). Federal law governs actions brought under the Act. *See E.E.O.C. v. Swift Transp. Co., Inc.,* 76 F.Supp.2d 1151, 1152 (D.Kan.1999). Employee's suit is therefore properly before this Court.

Employee was employed as a maintenance worker by Employer from sometime in 1995 until April 2000, when his employment was terminated. From 1995 until May 1998, he was paid a flat salary irrespective of the number of hours he worked. That changed in June 1998, when Employer implemented a new method of paying maintenance workers like Employee, known as the Fixed Salary for a Fluctuating Workweek method ("Fixed Salary Method"). Under the new method, Employee was to be paid a "base" salary each week plus half-time for hours worked in excess of forty hours.

Employer consulted with Joseph A. Wysong, a Department of Labor ("DOL") employee since 1961 who worked primarily in the DOL's Wage and Hour Division, about its implementation of the Fixed Salary Method. Mr. Wysong provided Employer and its attorney with advice and written materials about the Act's overtime provisions, specifically including information distributed by the DOL and other authoritative services about the Fixed Salary Method. Employer also consulted with an attorney knowledgeable in labor law.

Before implementing the Fixed Salary Method, Employer held a meeting, the purpose of which was to explain the new payment method to maintenance workers like Employee. Employer informed the workers that their base salary did not turn on the number of hours worked. Employer illustrated the point by providing written examples. One example provides: "Larry's salary is $521 per week. He worked 38 hours this week. Calculate his pay this week. Answer: $521.00." Employer's memorandum brief at 2. Employer also informed the workers that if they missed work because of illness or vacation, they would have to note their absence on a written form designed for that purpose. If an employee turned in such forms, the employee would still receive full compensation.

At the end of the meeting, all affected maintenance workers were told to sign a form entitled "Pay Method Explanation and Acknowledgment" ("Explanation Form"), indicating that the Fixed Salary Method had been explained to them. Employee did so. The Explanation Form states:

> Under this pay method the regular hourly rate of pay used to calculate additional pay will fluctuate from week to week. In addition, 1) the regular hourly pay rate will not reduce the weekly salary, 2) it will account for the unique functions performed by District Maintenance Personnel and 3) *it will not reduce an employee's pay unless they [sic] miss a full day of work.*
>
> *The "Fixed Salary" method mentioned above will be paid with deductions only for full days missed.* The variable in this pay plan is the overtime calculated for weekly bonus exceeding forty (40).

Employee's memorandum brief, Exhibit 2 (emphasis added).

Employee received his full base salary under the Fixed Salary Method for every week that he performed some work, except for the week he was terminated. This includes five weeks in which Employee worked less than forty hours; specifically, it includes weeks in which he worked 38.50 hours, 39.25 hours, 39.5 hours, 38.75 hours, and 32.50 hours. There is not a single week in which Employee missed a full day (other than a vacation day or sick leave absence), so there is not a single week in

which he worked less than thirty-two hours while the Fixed Salary Method was in effect. Employee received half-time for hours worked in excess of forty hours. This includes 62 weeks out of the 76 weeks in which Employee worked more than forty hours.

Employee filed suit in this Court in November 2000, claiming that Employer paid him less overtime than what is required under Section 207 of the Act. The parties now cross-move for summary judgment on the liability issue, and Employer moves for summary judgment on the damages issue.

## II.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir. 1999). However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir.1988).

The fact that both parties have moved for summary judgment does not establish that a trial on the merits is unnecessary. *See Miles v. Denver Public Schools*, 944 F.2d 773, 775 (10th Cir.1991) ("That both parties have moved for summary judgment does not preclude a finding that a genuine issue of material fact exists."). Summary judgment is inappropriate if disputes remain as to material facts. *See James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Union Pacific R.R. Co. v. City of Atoka*, 246 F.3d 682, 682 (10th Cir.2001) (quotation omitted).

## III.

### DISCUSSION

#### A. Employer's Liability Issues

The Act generally requires that employees covered by its provisions be paid an overtime premium of "time-and-one-half" for hours worked in excess of forty hours each workweek. *See* 29 U.S.C. § 207(a)(1). The Department of Labor, which administers the Act, provides to employers various methods for calculating overtime pay to suit different employment needs while still complying with Section 207(a). One such payment method is the Fixed Salary Method. *See* 29 C.F.R. § 778.114(a). Under that payment method, the employee receives a fixed salary as compensation for all hours worked, whether above or below forty hours, as well as an additional premium for each overtime hour worked. *See id.* The fixed salary must be sufficient to provide compensation at a regular rate meeting the minimum wage requirement of 29 U.S.C. § 206(a)(1), and the overtime premium cannot be less than one-half the regular rate of pay. *See* 29 C.F.R. § 778.114(c).

In order for the Fixed Salary Method to be properly invoked, each of five criteria must be satisfied: (1) the employee's hours must fluctuate from week to week, (2) the employee must receive the same fixed salary regardless of the number of hours worked during the workweek, (3) the salary must be sufficiently large to provide an average hourly compensation at a rate not less than minimum wage, (4) the parties must have a clear, mutual understanding

that the employer will pay the employee the fixed weekly salary regardless of the hours worked, and (5) the employee must receive extra compensation for all overtime hours worked. *See Flood v. New Hanover County*, 125 F.3d 249, 252 (4th Cir.1997) (interpreting 29 C.F.R. § 778.114); *Condo v. Sysco Corporation*, 1 F.3d 599, 601–02 (7th Cir.1993), *cert. denied*, 510 U.S. 1110, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994). Employee raises factual challenges to the second and fourth elements.

The parties dispute whether Employer's plan qualified based on whether Employer was obligated to pay Employee the same fixed salary regardless of the number of hours worked during the workweek. If the plan qualifies, Employee questions whether the parties had a clear mutual understanding that the fixed salary for fluctuating hours plan was in effect. For the reasons set forth below, those issues cannot be resolved as a matter of law, because each party relies upon admissible evidence which, if accepted as true by the factfinder, would entitle that party to the relief requested.

## 1. Significant Likelihood Employee Would Be Impermissibly Docked

■ The issue is whether Employer was obligated to pay Employee a fixed salary, where Employer verbally adopted that obligation but then had Employee sign a form stating that deductions would be made for full day absences. An employer wishing to implement the Fixed Salary Method generally cannot make deductions to the employee's salary for full day absences. *See* Opinion Letter from Dept. of Labor, Wage and Hour Div., 1999 WL 1002390, *1, (April 20, 1999) (stating that under 29 C.F.R. § 778.114, "no deductions in the employee's salary for full day absences are allowed."); 1 *Guide to Employment Law and Regulation* § 13:34 (2d. ed.1998). The Fixed Salary Method does, however, allow deductions if the employee

was willfully absent or tardy. *See Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 638 (5th Cir.2001) (holding that salary deductions made by an employer for willful absences, tardiness and the like did not violate rules for use of the fluctuating workweek method to calculate overtime pay); Opinion Letter from Dept. of Labor, Wage and Hour Div., 1999 WL 1002415, *1, (May 28, 1999) ("[D]isciplinary deductions, which do not cut into the required minimum wage or overtime compensation, may be made for willful absences or tardiness or for a situation such as an employee being sent home from work because of drunkenness.").

Employer claims it fulfilled its obligations under 29 C.F.R. § 778.114 by orally informing all maintenance workers, including Employee, that under the Fixed Salary Method their salaries would be paid up to and including forty hours per week. The affected workers were informed that if an employee worked less than forty hours in a given workweek, the employee would still receive a full week's salary. They also were informed that if an employee missed work because of illness or vacation, the employee would have to note the absence on a written form. However, it was explained that if an employee turned in such forms, the employee would still receive full compensation.

Based on the present record, Employer's verbal explanations comport with its actual practice. Employee received his full base salary under the Fixed Salary Method for every week that he performed some work. This includes five weeks in which Employee worked less than forty hours; specifically, it includes weeks in which he worked 38.50 hours, 39.25 hours, 39.5 hours, 38.75 hours, and 32.50 hours. Standing alone, Employer's claims support its contention that Employee was entitled to receive the same fixed salary regardless

of the number of hours worked during the workweek.

Employer's claims, however, do not stand alone. The evidence distilled by those claims is supplemented with and colored by the Explanation Form that Employee had to sign at the end of the meeting in which the new payment method was explained to him. According to that form, the Fixed Salary Method would not "reduce an employee's pay unless they miss a full day of work." Employee's memorandum brief, Exhibit 2; *see id.* ("The 'Fixed Salary' method mentioned above will be paid with deductions only for full days missed. The variable in this pay plan is the overtime calculated for weekly bonus exceeding forty (40).").

Employee correctly asserts that the Explanation Form would allow Employer to deduct his salary if he worked less than thirty-two hours in a given workweek for any reason, including an impermissible reason such as lack of available work. He claims that the fact that Employer never actually deducted his salary does not undermine that assertion for two reasons. First, there is not a single week in which Employee worked less than thirty-two hours, so his assertion is not contradicted in fact. Second, the Explanation Form creates a "significant likelihood" of Employer making deductions to Employee's salary. Those reasons are sufficient to overcome Employer's summary judgment motion, as explained below.

In *Auer v. Robbins,* the Supreme Court addressed whether certain employees were "bona fide professionals" as defined in the Act, where the employer did not exhibit an actual practice of deducting the employees' salary for disciplinary reasons but did distribute a manual permitting such deductions. 519 U.S. 452, 461–62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *see* 29 C.F.R. § 541.118(a) (stating that "bona fide professional" exempt status requires employ-

ee be paid a fixed salary, "which amount is not subject to reduction because of variations in the quality or quantity of the work performed."). To resolve the issue, the Supreme Court deemed it appropriate to consider whether the department manual created a "significant likelihood" of the employer making deductions for disciplinary reasons. The Supreme Court concluded that the manual did not create a significant likelihood that deductions would be made.

While the Supreme Court's conclusion is of no help to Employee, its underlying rationale is. The Supreme Court reasoned that because the manual covered both salaried employees and non-salaried employees, the expressed availability of disciplinary deductions may have pertained only to the latter. That being the case, the manual did not effectively communicate that pay deductions were an anticipated form of punishment for employees in petitioner's category. Although dicta, this Court must also recognize that the *Auer* Court pointed out: "If the statement of available penalties applied solely to petitioners, matters would be different." *Auer,* 519 U.S. at 462, 117 S.Ct. 905.

The Explanation Form herein, unlike the department manual in *Auer,* applied solely to and was signed exclusively by affected maintenance workers, including Employee. *Compare Spradling v. City of Tulsa,* 198 F.3d 1219, 1223–4 (10th Cir. 2000) (ruling that manuals not applicable to plaintiff did not effectively communicate substantial likelihood of impermissible deductions). The form stated that deductions would be made for full day absences. It made no distinction between willful absences and absences occasioned by a lack of work. Viewed in the light most favorable to Employee, the Explanation Form raises a genuine issue of material fact regarding whether Employer was obligated

to pay Employee a fixed salary irrespective of the number of hours worked during the workweek; it also precludes this Court from ruling as a matter of law that Employee's salary was fixed and immutable.

At the same time, while the Explanation Form raises a factual issue, the Court cannot rule as a matter of law that Employee's salary was contingent and subject to impermissible deductions. In addition to its oral adoption and explanation of the Fixed Salary Method, Employer has offered admissible evidence supporting its contention that although the Explanation Form states that deductions would be made for full days missed, that was neither its intent nor its practice. *See* Allsup Depo., pp. 32–33. Employer also has offered deposition testimony and sworn affidavits supporting the inference that deductions would only be made for willful absences and the like, which deductions are permissible under the Act. *See* Wysong Depo., p. 14. Viewing the evidence in the light most favorable to Employer, this Court cannot rule as a matter of law that Employee's salary was subject to impermissible deductions. *See Yourman v. Giuliani,* 229 F.3d 124 (2nd Cir.2000) (ruling that in the absence of proof of actual deductions, employees must prove clear communication of a significant likelihood of impermissible deductions).

### 2. Did the parties have a clear mutual understanding the Fixed Salary Method was applicable?

 A second element over which there is a factual dispute involves the existence of a mutual understanding that Employee would receive a fixed salary regardless of hours worked. The issue is whether Employee clearly understood that he was being paid a fixed weekly salary regardless of the hours worked, where Employer explained the Fixed Salary Method but then had Employee sign a form stating that deductions would be made for full day absences. The requirement that there be a clear, mutual understanding between the parties may be established by a written or verbal explanation of the Fixed Salary Method. *See Samson,* 242 F.3d at 638 (written explanation); *Anderson v. County of Kershaw,* 172 F.3d 862, 1999 WL 55182 (4th Cir.1999) (verbal explanation). It may also be established by the employer's consistent administration of the payment method. *See Griffin v. Wake County,* 142 F.3d 712 (4th Cir.1998); *Zoltek v. Safelite Glass Corp.,* 884 F.Supp. 283 (N.D.Ill.1995) (ruling that agreement may be implied from consistent conduct).

Employer claims it satisfied the requirements of 29 C.F.R. § 778.114 by explaining the Fixed Salary Method to affected maintenance workers, including Employee. Not only did Employer inform the workers that their base salary was fixed, but it went so far as to provide the workers with written examples illustrating the point. One example provided: "Larry's salary is $521 per week. He worked 38 hours this week. Calculate his pay this week. Answer: $521.00." Such efforts support not only Employer's claim that it was obligated to pay Employee the same salary regardless of the number of hours worked but also the second issue in dispute, whether Employee clearly understood that to be the case. *See Samson,* 242 F.3d at 637 (holding that employees had or should have had a clear understanding that they would be paid a fixed salary, where employer explained that they would be paid the same salary regardless of the hours worked, sometimes using formula sheets to illustrate the point).

Employer also claims Employee should have understood that he was being paid under the Fixed Salary Method, because of its consistent administration of that method. For example, in Employee's case, Employer points out that Employee re-

ceived his full base salary under the Fixed Salary Method for every week that he performed some work, including five weeks in which he worked less than forty hours. Such evidence may indeed support Employer's contention that Employee understood he was being paid a fixed salary under the Fixed Salary Method. *See Griffin*, 142 F.3d at 716–17; *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1275 n. 12 (4th Cir.1996) (noting that "an employer can also demonstrate the existence of this clear mutual understanding from employment policies, practices, and procedures."). Viewing Employer's claims by themselves, Employer makes a strong summary judgment argument on this issue.

At this point, however, Employer's claims must be viewed alongside the Explanation Form. That form may create the reasonable inference that there is an issue about a mutual understanding whether an employee's salary could be reduced if the employee missed a full day of work. Employer's expert witness admits as much in his deposition testimony:

Q: Would you agree with me, Mr. Wysong, that Exhibit 1 [Explanation Form], its four corners effectively communicates that deductions will be made for full days missed?

A: If I were the employee reading it and signing it, yes, I would agree that's the way it reads.

Wysong Depo., p. 19, lines 18–22.

The fact that the Explanation Form may create such an inference undermines Employer's motion for summary judgment, because written instruments containing misstatements about the Fixed Salary Method suggest that the employee may have lacked a clear understanding of that method. *See Dingwall v. Friedman Fisher Assoc., P.C.*, 3 F.Supp.2d 215 (N.D.N.Y. 1998) (holding that employee lacked clear understanding that Fixed Salary Method was being implemented, where employee manuals distributed at various times during his employment included statements that violated the payment method's requirements).

Nor is it possible to conclude based on the current record that Employee possessed a clear understanding merely because there was no salary deduction for time worked under forty hours. As noted earlier, the full-day deduction provisions in the Explanation Form would be invoked if and only if Employee worked less than thirty-two hours in a given workweek. There is not a single week in which Employee worked less than thirty-two hours, so *Griffin* and *Monahan* are not dispositive. Viewing the foregoing evidence in the light most favorable to Employee, this Court cannot rule as a matter of law that Employee had a clear understanding that his salary was fixed and immutable irrespective of the number of hours worked. This provides yet a second reason why Employer's motion for summary judgment must be denied.

Based on the current record, this Court also cannot rule as a matter of law that Employee lacked a clear understanding that he was being paid under the Fixed Salary Method. Employer's verbal explanation, written examples, and consistent application of the Fixed Salary Method present evidence conflicting with the manual on the issue. It is the role of the factfinder to hear the evidence, assess the credibility of the parties, and to make findings of fact. Until there remain no genuine issues of material fact, it is premature for this Court to rule as a matter of law on the liability issue. *See James Barlow Family Ltd. Partnership*, 132 F.3d at 1319.

**B. Damages**

■ The Act contains several provisions governing the assessment of damages in

unpaid overtime cases. One provision states that an employer is liable for three years of back pay, rather than two years, if the employee can establish that the employer willfully violated the Act's overtime provisions. *See* 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (ruling that in order to invoke the three-year period, the employee must prove that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]."). Another provision states that an employer who violates the Act's overtime requirements is liable to the employee for certain liquidated damages, unless the employer can establish that it acted in good faith and upon reasonable grounds. *See* 29 U.S.C. § 260.

Employer claims that if Employee should prevail on the liability issue, he should be entitled to neither liquidated damages nor three years of back-pay. In support of its claims, Employer has come forward with uncontroverted, admissible evidence that it retained a long-time former Department of Labor employee, Mr. Wysong, for the purpose of consulting with its attorney about Employer's implementation of the Fixed Salary Method. Mr. Wysong recommended that payment method for maintenance employees and provided Employer with documentation pertinent to the Fixed Salary Method. Employer then prepared the Explanation Form signed by Employee. However, Mr. Wysong specifically reviewed and approved that form. Specifically, he concluded the addition of the sentence on reducing wages only for full days missed "was probably okay." Wysong Depo. at 14. Upon Mr. Wysong's advice, Employer also reviewed the Fixed Salary Method with a labor attorney, Carman Lavender. Employer relied upon the information provided by Mr. Wysong and Mrs. Lavender when implementing the Fixed Salary Method. Using that information, it held a special meeting to explain the new payment method to its employees, including Employee. Such efforts indicate that Employer acted in good faith and upon reasonable grounds and, even assuming *en arguendo* that its plan violated the overtime provisions of the Act, that the violation was not wilful.

■■ When an employer fails to consult a lawyer or other expert and cannot demonstrate a reasonable basis for its interpretation of the Act, it may be responsible for liquidated damages. *See Sanders v. Elephant Butte Irr. Dist. of New Mexico*, 112 F.3d 468 (10th Cir.1997). However, an employer establishes a good faith defense to liquidated damages by diligently consulting legal specialists and labor specialists and following their advice. *See Nelson v. Alabama Institute for Deaf and Blind*, 896 F.Supp. 1108 (N.D.Ala.1995); *Quirk v. Baltimore County, Md.*, 895 F.Supp. 773 (D.Md.1995). Employee advances no evidence to contradict or create a factual issue as to Employer's good faith reliance upon the advice of the qualified professionals it retained to advise it on the implementation of the Fixed Salary Method. Summary judgment for Employer is thus appropriate on this issue. *See Considine v. Newspaper Agency Corp.*, 43 F.3d 1349 (10th Cir.1994); *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887 (10th Cir.1991).

Employee also advances no evidence that any violation was wilful so as to extend the back pay limitation to three years. Where the employer makes a bona fide effort to consult knowledgeable professionals on the application of the Act, any resulting violation is not wilful unless their advice is wilfully ignored. *See Mireles v. Frio Foods, Inc.*, 899 F.2d 1407 (5th Cir.1990); *Andrews v. DuBois*, 888 F.Supp. 213 (D.Mass.1995); *Donovan v. I and J, Inc.*, 567 F.Supp. 93 (D.N.M.1983).

Employee has produced no evidence of a wilful violation so summary judgment will be awarded Employer on this issue.

## IV.

### CONCLUSION

For the reasons set forth above, the Court finds that the parties' cross-motions for summary judgment on the liability issue are premature as there remain genuine issues of material fact, and that Employer's motion for summary judgment on damages is well taken. An order in conjunction with this Opinion will issue.